ALEXANDER MCKENZIE *vs.* MARIAH ASHLEY & others.

Hampden.    Sept. 28, 1887. — Jan. 7, 1888.    C. ALLEN & HOLMES, JJ.,
absent.

A testator bequeathed to his wife, in lieu of dower, the income for life of the residue of his estate after the payment of two legacies to herself, and also so much of the principal as should be necessary to give her "a good and comfortable support." With $1100 of her own money, and $2500 paid her from the principal of the trust fund, which was paid to her with the consent of the remainderman, she purchased a house, in which she lived for several years on the income received from her husband's estate. Subsequently, the income became insufficient for her support, and she requested that another part of the principal be paid to her. *Held,* that she was not obliged to dispose of her house and use the proceeds thereof for her support, before her request could be granted.

BILL IN EQUITY by the executor of the will of Josiah D. Ashley, alleging that said Ashley died on January 20, 1871, leaving a will, which contained the following clauses:

" To my beloved wife, Mariah Ashley, I give and bequeath all my household furniture and wearing apparel.

" I further give and bequeath to my beloved wife, Mariah, the sum of seven hundred dollars.

" To my beloved wife, Mariah, I further give and bequeath the use of all the rest and residue of my estate during her natural life; but, should the use of my estate not be sufficient to give her a good and comfortable support, then it is my will that she use so much of the principal as shall be necessary to give her a good and comfortable living during her lifetime; this in lieu of dower, subject, however, to the payment of my just debts and funeral expenses.

" I give and bequeath one hundred dollars to Frederic Alderman, son of Nelson Alderman, out of that part of my estate made subject to my wife's use, to be paid after her decease.

" I give and bequeath to Joseph B. Hascall all of that portion of my estate not before disposed of, made subject to my wife's use, that shall remain unexpended at her decease."

The bill further alleged that the estate of the testator consisted mostly of real estate, which was sold for the payment of debts, under a license from the Probate Court; that the proceeds, after payment of liabilities, had been invested by the

plaintiff, and the income paid to the widow of the testator, as provided in the will; that on May 20, 1871, Joseph B. Hascall, the remainderman, executed an instrument in writing, by the terms of which he agreed that the plaintiff might appropriate from the principal the sum of $2500 "for the comfort and the comfortable support" of the widow of the testator; that said sum was so appropriated, and was duly allowed by the Probate Court in the plaintiff's account as executor; and that since said payment other sums had been paid to the widow out of the principal, and had been accounted for and allowed in the Probate Court.

The bill further alleged, that the widow contended that the income of the estate was not sufficient to give her a good and comfortable support.

The prayer of the bill was that the plaintiff be instructed as to the proper execution of his said trust.

The case was heard by *Holmes*, J., who reported it for the consideration of the full court, in substance as follows:

It was admitted that the income of the fund now in the plaintiff's hands was not sufficient to give the widow "a good and comfortable support," but the representatives of Joseph Hascall, the remainderman, who is now deceased, rely upon the fact, also admitted, that on May 20, 1871, the sum of $2500 was appropriated to the widow's use, by the consent of said Hascall, and that this sum was used by the widow, in the purchase of a house, which she now occupies. This sum has not been exhausted upon her support, otherwise than as above set forth.

It was further agreed, that at the testator's death, and at the time of the widow's receipt of said sum of $2500, the income of the fund applicable to her support was $600, and that the income was sufficient for her support for some years after the receipt of said sum. It was proved, subject to the question of the admissibility of the evidence, that Hascall intended that the widow should purchase a house, and expressed his approval of this purchase, in a conversation before the instrument was made by him; that the widow is now seventy-seven years old and partially paralyzed, and thought at the time of the purchase that she could be more comfortable in a house of her own,

which she had always been accustomed to, than she would be in hired lodgings. She was in the ordinary health of people of her age at the time of the purchase. The house purchased was of the same class that she had previously lived in with her husband. At the time of the purchase, the rent of the house was $15 or $16 a month. It cost $3600, but it is now worth about $1800.

*H. B. Stevens*, for the widow.

*E. B. Maynard & C. C. Spellman*, for the representatives of Hascall.

KNOWLTON, J. The defendant Mariah Ashley was entitled, under the will of her husband, to the income for life of the residue of his estate after the payment of two legacies to herself, and also to so much of the principal as should be necessary to give her a good and comfortable support. After her death, Frederic Alderman, one of the defendants, is to be paid $100 from what is left, and the remainder is to be given to the representatives of Joseph B. Hascall, a legatee who has deceased since the death of the testator. The income is now insufficient for the support of Mariah Ashley, and the plaintiff should provide for her from the principal, unless the whole or a part of $2500, paid her in 1871, is first to be used for that purpose. With this sum paid her, and with $1100 of her own money, she bought at that time a house for her home, and has occupied it ever since. The only question in the case is whether she must dispose of that house, or of some interest in it, and use the proceeds, before she can receive anything more from the principal of her husband's estate.

The words in the will, "a good and comfortable support," and "good and comfortable living," are to be construed liberally. She is the testator's widow, and this provision is in lieu of dower. Moreover, the facts that no one else was to receive anything under the will until after her death, and that the entire estate was set apart by the testator for her use if she should need it, indicate an intention on his part that she should be well supported.

The house which she bought was of the same class that she had previously lived in with her husband, and would rent for fifteen or sixteen dollars per month. She was well advanced in years, and had always been accustomed to living in a house of

her own.   When the payment of $2500 was made, the income of the fund was sufficient for her support, and continued to be for some years afterward.   This payment was accounted for and allowed in the Probate Court, with full knowledge, on the part of those interested, of the use to which it was put, and it has apparently never been objected to.   Indeed, Joseph B. Hascall, who, as residuary legatee, was the only person interested against it, — except in the remote contingency of the fund being so far consumed as to affect the legacy of $100 to Frederic Alderman, — consented in writing to the payment, well knowing that the money was to be used in the purchase of this house.   In the light of these facts, we cannot doubt that the procurement of a house to be used as a home for Mariah Ashley was reasonably necessary, and that the cost of it was properly chargeable to the fund for her support.

If the $2500 had been exhausted in procuring such a home for her lifetime, the case would be free from difficulty.   But she obtained an estate in fee, and after her death this house will pass under her will or descend to her heirs.   To have kept strictly within the purpose for which the money was to be appropriated under the will, she should have applied it to the purchase of an estate for her personal occupation during her life, and, if it became necessary to acquire the whole title, the remainder should have been held for the benefit of the fund.   Instead of making a strict appropriation of the payment with a view to the preservation of the legal rights of all parties, she put $1100 of her own money with it, and bought the house, and took an estate in fee to herself.   The property has diminished in value and is now worth but $1800.   Eleven thirty-sixths of that sum represent a payment from her own money, and twenty-five thirty-sixths a payment from the principal of the fund.   The use too of the contribution from her own property has apparently gone in diminution of the sum which the fund would otherwise have been required to supply.   Does her holding a title in fee, instead of for life, in this share, preclude her from claiming support until she shall have disposed of the remainder, and consumed the proceeds?

Her purchase was made at a time when it was not expected that this question could ever arise.   The income was then ample

for her wants, and continued to be for several years. It is fair to suppose that she acted in good faith, and that all parties interested consented to her action. The payment having been made to her absolutely, as needed for her support, with the consent of the only one interested, she might apply it as she chose, without accounting for any part of it, if the income should continue to be sufficient for her wants. It was only in the unexpected event of her needing more of the principal, that her disposition of it would become material. Moreover, there may have been practical objections to complicating the title with a division of it into different estates. There is nothing to indicate that any one suggested taking the title differently at the time of the purchase. On the contrary, the approval of the account in the Probate Court, and the payment to her of portions of the principal from time to time afterward, all of which have been accounted for and allowed, indicate that all parties interested have treated this purchase as a final disposition of the $2500 in accordance with the provisions of the will. If the money had been paid her for her support, and she had lost it, it would hardly have been contended that she could not afterward, if needy, have resorted to the fund for relief. All she received was used more than sixteen years ago. Most of it was properly applied to a use contemplated by the will, — the procurement for her of a home for life. The remaining part, which represents the excess of value of the estate after her death above the contribution from her money, was so paid out and used in connection with the first, as to be difficult of separation from it. And this was done, as we infer, under an implied agreement of all parties to consider it a payment authorized by the will.

We do not think, under the circumstances of this case, that Mariah Ashley's ownership of an estate in the house which will extend beyond her lifetime is such a possession of property received from the plaintiff as to require her to dispose of it and apply the proceeds to her support, or render it necessary that a transaction so long assented to should be now disturbed. The plaintiff may therefore properly pay her, under the will, such sums, in addition to the income, as she may need for her comfortable support. *Decree accordingly.*