In the Matter of the Estate of LENA BREMER, Deceased.*

Surrogate's Court, Westchester County, June 20, 1935.

---

* Affd., on reargument, 157 Misc. 221.

*O. H. Droege,* for the executors.

*Larkin, Rathbone & Perry,* for the Central Hanover Bank and Trust Company, objectant.

*Stewart & Shearer,* for the United States Trust Company of New York.

*Pliny W. Williamson,* special guardian.

SLATER, S. The decedent was a resident of Pelham, N. Y. She died on January 18, 1933, leaving a last will and testament admitted to probate on February 18, 1933. Her distributees are four children. Her will was executed on March 5, 1932. It provides for the payment of debts and funeral expenses; gives her jewelry and her real property at 235 Monterey avenue, Pelham Heights, N. Y., with her household furniture and personal belongings, to her daughter, Emma Bremer; creates a trust of $15,000 for her son Henry Bremer; gives $300 to the Kensico Cemetery in trust for the upkeep of the family plot; and gives the residue of her estate in equal shares to her children, Louis H. Bremer, George H. Bremer and Emma Bremer. Her son Louis H. Bremer and her daughter Emma Bremer are appointed as executors without bond. The will further directs that the expenses for maintaining the residence at No. 235 Monterey avenue, Pelham Heights, for one year after her death " shall be paid out of the *principal* of my estate, to wit: — taxes, interest and coal."

The pertinent parts of the will are as follows:

" *Fourth.* I give and bequeath the sum of Fifteen thousand ($15,000.00) Dollars to the Central Hanover Bank and Trust Company and Emma Bremer, and their successors, appointed such Trustees by me, by a certain Trust Agreement executed by me on the 1st day of March, 1932, to hold the said sum of Fifteen Thousand ($15,000.00) Dollars in trust for the *benefit of my son, Henry Bremer, in accordance with and subject to all the terms, conditions and provisions of such Trust Agreement.* [Italics mine.] Said bequest of Fifteen thousand ($15,000.00) Dollars is to be incorporated into and become a part of said Trust Estate, conveyed by me to said Trustees, and is to be held and administered by said Trustees in all respects in accordance with the terms and conditions of the agreement created in said Trust Agreement."

" *Eleventh.* In paying legacies, and in providing for the Trust created in Paragraph ' fourth ' hereof, my executors or my trustees, as the case may be, may, in their discretion, allot to any legacy any specific security or securities or other property belonging to my

estate, and to that end they may value or appraise the property belonging to my estate, and the judgment of my said executors or trustees as the case may be, as to the propriety of such allotment and the value for the purposes of such allotment, of any securities or other property so allotted, shall be final and conclusive upon all persons interested in my estate. In making such division they shall not be bound by the market value of any security or other property, but shall form their own judgment of value, having regard to the income producing power of the investment, its safety and permanence, and such other factors as they may deem material upon the question of value, except that no specific security shall be allotted to my son, George H. Bremer, without his consent."

On December 1, 1930, decedent entered into a certain trust agreement whereby she transferred certain personal property to herself and her daughter Emma for the benefit of her son Henry Bremer during his lifetime, with remainder over. On March 1, 1932, in accordance with the reservation contained in the first trust agreement, she made a new amended trust agreement for substantially the same purposes as set forth in the original agreement, and under which the same personal property was transferred to herself and her daughter Emma, in trust, " to apply the net income and profits thereof to the use and benefit of my son, Henry Bremer, during his life." Upon the death of her son Henry, there is a gift over of the corpus to the widow and children, if any, of Henry, or, in case of their death, to the children and issue of any deceased child of the donor.

The applicable parts of the trust agreement read as follows:

" *Third.* I direct my Trustees to apply the entire net income and profits of this Trust Estate for the *use, benefit and support of my son, Henry,* in such installments and at such time as they, in their sole discretion, may determine to be necessary and proper. I direct that no one, under any circumstances, other than my Trustees, herein named, or their successors, shall have the right to determine the manner of the application of such income to the use of my son Henry."

" *Thirteenth.* In the event that the income realized from the Trust Estate is not sufficient to provide properly for the *support* or medical attention of my son, Henry, then I authorize my Trustees at their sole discretion, to apply from time to time a portion of the principal of said Trust Estate to his support and maintenance, but such payments from principal shall not exceed in the aggregate the sum of Ten Thousand ($10,000.00) Dollars."

The agreement further provides that upon her death prior to the termination of the trust, the Central Hanover Bank and Trust

Company is to be one of the trustees in her place and stead. The bank has qualified and is now acting as trustee in conjunction with Emma Bremer.

At the time of her death the decedent had personal property amounting to $20,774.11 and equity in four parcels of real estate valued at $78,000, or a total estate of $98,774.11. One of the parcels of real estate, appraised in the estate tax proceeding at $38,000 and subject to a mortgage of $20,000, was specifically devised to her daughter, Emma Bremer, under paragraph third of the will. The executors are accounting for personal property only, amounting to $23,967.48. Included in this amount is the sum of $1,757.93, interest collected on a mortgage covering property at 2 Livingston avenue, White Plains, N. Y. The affidavit of Louis H. Bremer, one of the executors, shows that all of the income was used in defraying the *expenses of maintaining* the house at Pelham Heights, which amounted to $1,942.19. In paying these expenses out of *income*, the executors acted contrary to the express provision contained in paragraph thirteenth of the will. The executors claim that these payments were made out of income " as there was no other means of paying it."

On December 7, 1934, the executors assigned to Emma Bremer and Central Hanover Bank and Trust Company, as trustees under said trust agreement, a certain mortgage made by T. M. B. Z., Inc., to The Prudence Company, Inc., for $20,000 on property known as No. 2 Livingston avenue in the city of White Plains, N. Y. On the same day an ownership agreement was entered into by the executors and the trustees, wherein it was stipulated that the ownership of said trustees in said mortgage was only to the extent of $15,000. The assignment of a participating interest in this mortgage was made in payment of the legacy to the trustees under paragraph fourth of the will.

The objections are based upon the failure to make provision for *payment of interest on the legacy of $15,000* from September 18, 1933 (seven months from the date of the issuance of letters), to December 7, 1934, the date of payment.

The executors are resisting payment of any interest upon the legacy of $15,000 upon the following grounds:

1. That, at the time of the payment of the legacy to the trustees, a receipt was given in full payment of the legacy;

2. That the legacy in this case is not the primary source of income for the testatrix's son Henry Bremer;

3. That ample provision for Henry's support had been previously made by the testatrix;

4. That a trust fund of $60,000 had been established for his benefit, the income from which, in 1932, was $3,150, more than sufficient to provide for him; and

5. That the gift in trust is not a gift for maintenance and support.

The special guardian for the incompetent maintains that the legacy of $15,000 was a gift in trust for *maintenance and support*, and, as such, bears interest from date of the death of testatrix until the date of payment.

The son, Henry Bremer, is an incompetent person residing at the Long Island Home, Amityville, N. Y. By reason of his condition, he was the special object of his mother's love and affection. She has shown this by the provisions made for him under the trust agreement and in her will.

With the account of proceedings there was filed a release signed by the Central Hanover Bank and Trust Company and Emma Bremer, as trustees, for a participating share to the extent of $15,000 in the certain bond and mortgage hereinbefore referred to. The receipt is undated, but was acknowledged on February 7, 1935, and February 13, 1935, respectively. The receipt recites that the same is " in full payment of the legacy bequeathed to us as Trustees by paragraph Fourth of the Last Will and Testament of said Lena Bremer, deceased."

A trustee has no power to change or compromise the trust property committed to his charge without authority expressed in the instrument establishing the trust. To determine his authority, we must look to the trust instrument itself. The authority and power of the trustees are limited to those given in the instrument creating the trust, and unless such authority is given expressly or by necessary implication, a waiver by the trustee of either principal or interest is not binding upon the beneficiary. (*Colorado & Southern Ry. Co.* v. *Blair*, 214 N. Y. 497; *Hollister* v. *Stewart*, 111 id. 644.) There is no authority in the trust agreement for a waiver by the trustees of *interest upon the legacy*. Hence, the receipt signed by the trustees is no bar to their claim for interest.

The next question to be determined relates to the payment of interest upon the legacy. It is well settled that a legatee, from the time the legacy becomes payable, is substantially in the situation of a creditor, and is, therefore, entitled to receive interest at the legal rate on the legacy from the time it is payable. A legacy has many of the attributes of a debt. It has a definite due date. This was formerly one year after the issuance of letters, but is now seven months. (Surr. Ct. Act, §§ 258–261.) An action at law may be maintained for the payment of the legacy, and it draws interest at the legal rate from the date of its maturity. (*Matter*

*of Rutherfurd*, 196 N. Y. 311; *Bank of Niagara* v. *Talbot*, 110 App. Div. 519; affd., 184 N. Y. 576; *Matter of Harned*, 140 Misc. 151.) Whether the assets of the estate have been fruitful or unproductive is an entirely immaterial consideration and does not affect the right of the legatee to interest. (*Matter of Oakes*, 19 App. Div. 192, 193; *Matter of Rutherfurd, supra; Clayton* v. *Kingston*, 202 App. Div. 165, 168.) But the instant case does not fall within this rule.

In support of their contention that no interest should be charged upon the $15,000 legacy, the executors point out that the principal of the fund set up under the trust agreement amounted, at the time of the death of this decedent, to $60,000, which, with the $15,000 legacy given under paragraph fourth of the will, makes a total trust fund of $75,000; that the income from the $60,000 trust fund is more than ample for the needs of the incompetent; and that, because the executors are given authority under the will to invade the principal, it is not a trust for support and maintenance. This contention is without merit.

Where the income of an estate, or a designated portion, is given to a legatee for support and maintenance for life, he becomes entitled to it whenever it accrues, and, if the estate is productive of income from the death of the testator, he can require the executor to account to him for the income from that time. In such a case the rule that general legacies shall not bear interest until the expiration of one year from the grant of letters testamentary or of administration has no application. (*Matter of McGowan*, 124 N. Y. 526.) It is, by its terms, limited to general legacies payable out of the corpus of the decedent's estate. (*Matter of Stanfield*, 135 N. Y. 292, 294; *Matter of Bird*, 241 id. 184; *Matter of Wolfman*, 137 Misc. 325; *Matter of Meyer*, 140 id. 1.)

If no income is earned, obviously none would be payable, and where income is received, as is the case here, the income allowable will be at the rate earned by the estate. (*Matter of Lord*, 134 Misc. 198; affd., 228 App. Div. 771; *Matter of Meyer, supra; Matter of Taft*, 144 Misc. 896.)

The general rule is that a gift of an annuity or trust income speaks from the testator's death. The same reasoning requires payment of interest from the date of death on gifts made for support and maintenance, unless otherwise stated. And, too, here the facts of the case indicate an intention to speak of the gift from testator's death.

Another question arises which has not been briefed by counsel. It is a rule of law that wills must be executed in compliance with the statutory formalities and are not to be enlarged or diminished by reference to extrinsic documents which may not be authentic.

(Dec. Est. Law, § 21.)  The rule against incorporation will not be carried to "a drily logical extreme." (*Matter of Fowles*, 222 N. Y. 222, 233.)  In *Matter of Rausch* (258 N. Y. 327) the court has relaxed the rule of law affecting this question, so that the incorporation by reference to a properly executed trust agreement is permitted.

I hold that, in the instant case, the doctrine of incorporation by reference applies; that the gift of $15,000 is made subject to the terms of the trust agreement, *i. e.,* " for the use, support and maintenance " of the son; that the legacy of $15,000, under paragraph fourth of the will is for support and maintenance; that the trustees are entitled to a proportionate share of the income earned by the estate from date of death of this decedent, less any payments of interest received by the trustees within that period.

Submit decree on notice in accordance with this opinion and decision.