CLEVELAND CLINIC FOUNDATION et al. v. HUMPHRYS et al.

No. 7694.

Circuit Court of Appeals, Sixth Circuit.

July 2, 1938.

John D. Fackler, Howard F. Burns, and John Adams, all of Cleveland, Ohio (Newton D. Baker, Howard F. Burns, Baker, Hostetler, Sidlo & Patterson, John D. Fackler, Trafton M. Dye, and Fackler & Dye, all of Cleveland, Ohio, on the brief), for appellants.

Thomas B. Gilchrist and Edward Abbe Niles, both of New York City (Day, Young & Veach, of Cleveland, Ohio, Cadwalader, Wickersham & Taft and Thomas B. Gilchrist, all of New York City, Luther Day, and George B. Young, both of Cleveland, Ohio, and Edward A. Niles and Arthur H. Barker, both of New York City, on the brief), for appellees.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

Appellants and appellee, the Central National Bank of Cleveland, Trustee, were defendants below and appellee, Ethel Tod Humphrys, was plaintiff, and they will thus be referred to in this opinion.

This controversy relates to an equitable claim of the plaintiff against a trust created by her for the benefit of her daughter, Sarah Tod McBride and to the ownership and control of income arising from a trust created by the will of J. H. McBride, lifelong resident of Cleveland, Ohio, who died August 2, 1913. He executed his will in 1910 and at that time had four living children. A son, Herbert McBride, had died in 1907, leaving the plaintiff, his widow, and two infant daughters, Sarah Tod McBride and Elizabeth McBride. The elder McBride, by his will, divided his residuary estate into five equal parts, giving to each of his four living children one part and leaving the other in trust to his grandchildren, the daughters of Herbert.

The clause of his will establishing the trust is as follows:

"Item III: I hereby direct that the rest and residue of my estate, real, personal and mixed, be divided into five equal parts, and I give, devise and bequeath those equal parts to my beloved children as follows, to-wit:

"One of said equal parts to Grace E. Crile;

"One of said equal parts to Malcolm Lee McBride;

"One of said equal parts to Edith L. Sherman;

"One of said equal parts to Donald McBride, and their heirs, and the remaining equal part to Malcolm Lee McBride, Donald McBride and George W. Crile, for my beloved granddaughters, Sarah Tod McBride and Elizabeth McBride, the daughters of my deceased son, Herbert McBride, in trust, nevertheless, upon the following terms and conditions, to-wit:

"1st. Said share shall be held for the equal benefit of my said granddaughters until they shall respectively arrive at the age of twenty-five (25) years, and when the first of said granddaughters so arrives at the age of twenty-five years, the then existing trust estate shall be divided into two equal parts, and one part thereof, with all accumulations thereon, transferred to said granddaughter, and the remaining part held until said other granddaughter arrives at the age of twenty-five years, when said remaining part, with all accumulations thereon, shall be transferred to her. Until my said granddaughters shall so arrive at the age of twenty-five years, such portion or all of the net annual income derived from said trust estate as their mother, Ethel Tod McBride, desires, shall be paid to her. to be expended by her according to her own judgment; and in the event of her decease prior to the termination of said trust estate, I hereby authorize and empower my said Trustees, and their successors, in their discretion, to expend for the maintenance and education of my said granddaughters,

or either of them, any portion or all of said net annual income; and if, in any year, any portion of said net annual income be not paid to the said Ethel Tod McBride or expended by my said Trustees or their successors as hereinbefore provided, such portion thereof shall, each year, be added to and become part of the principal of said trust estate.

"2nd. In the event of the decease of either of said granddaughters without issue, the survivor thereof shall be entitled to all of said net annual income, and upon the arrival of said survivor at the age of twenty-five years, the then existing entire trust estate shall be transferred to said survivor.

"3rd. The issue of a deceased granddaughter shall be entitled to the share of said decedent, which said share shall be transferred to the legal representatives of said issue at the time said decedent would have been entitled to the same; and while said share is so held in trust, the income therefrom may be paid, in the discretion of my said Trustees and their successors, for the maintenance and education of said issue, as provided by the terms hereof for said decedent.

"4th. In the event of the death of both of said granddaughters without issue and before arriving at the age of twenty-five years, I hereby direct that said trust estate shall be terminated and distributed, share and share alike, to my children, Grace E. Crile, Malcolm Lee McBride, Edith L. Sherman and Donald McBride, and their heirs."

The trustees named in the will qualified and served until the death of Donald McBride, who was succeeded by appellee, Central National Bank of Cleveland.

Elizabeth McBride died at the age of fifteen, and when Sarah Tod McBride reached her twenty-fifth birthday the corpus of the McBride trust was conveyed to her and that trust terminated.

At the time the testator made his will, he knew the plaintiff had an annual income sufficient to maintain herself and her children luxuriously and her income continued throughout the period of the trust. Shortly after his death, plaintiff established a comfortable home for herself and daughters in New York and thereafter maintained and educated them in the manner and according to the standards to which they had been accustomed, using her own income.

On February 15, 1916, the contingent remaindermen, under the trust, transferred all of their present or future interest in its accumulated income to the plaintiff and in April, 1916, she made formal demand upon the trustees for payment to her of its annual income. On May 5, 1916, the trustees appointed the Superior Savings Bank & Trust Company, hereafter called the Bank, predecessor of the defendant, the Central Union National Bank, their agent for safekeeping and administration of the trust. It was directed by the trustees to pay to the plaintiff all the income until otherwise notified in writing by them. On May 9, 1916, the Bank advised the plaintiff of the agency agreement and that it had transferred all the income accruing to the estate from October 25, 1915, to May 1, 1916, to an account separate from the estate and called it "The Ethel Tod McBride Trust" and on May 24, 1916, this agreement was ratified and approved by the plaintiff but was modified by her in December, 1916 and March, 1918.

On June 30, 1920, plaintiff converted the agency agreement into a formal trust and in its preamble referred to the following facts:

1. The death of her daughter, Elizabeth, April 2, 1920.

2. That she (plaintiff) was authorized to expend all or any part of the net annual income derived from the McBride trust as she chose.

3. That instead of expending the income as authorized under the McBride trust, she had expended her own funds for the education and support of her daughters and had caused the income arising from the trust to accumulate in a separate account known as the "Ethel Tod McBride Trust."

4. That she proposed to continue the expenditure of her funds for the education and support of her daughter, Sarah, and to permit the income from the J. H. McBride trust to accumulate as it had theretofore.

In the sixth paragraph she named the beneficiaries and stated the life and termination of the trust, which reads as follows:

"The said Ethel Tod McBride Trust shall continue as long as both First Party and the said Sarah Tod McBride shall live. Upon the death of First Party, Second Party shall transfer, convey and deliver to the said Sarah Tod McBride all

of the securities and uninvested funds and other assets then in its hands as part of the said Trust, provided the said Sarah Tod McBride shall at that time have reached the age of thirty years, otherwise the Trust shall continue and Second Party shall transfer, convey·and deliver as aforesaid to the said Sarah Tod McBride upon her arriving at the age of thirty years. If said Sarah Tod McBride should die before arriving at the age of thirty years, and leave a' will disposing of the property embraced in said Trust, Second Party shall thereupon transfer, convey and deliver as aforesaid to her executor or administrator, for distribution in accordance with such will; but if said Sarah Tod McBride should die before arriving at the age of thirty years intestate as to the property embraced in said Trust, or as to some part thereof, Second Party shall thereupon transfer, convey and deliver the property embraced in said Trust, or such part thereof as to which she may die intestate, to her issue, if she leave issue surviving, and if she leave no issue, then to the legal representatives of the First Party hereto. Upon the death of the said Sarah Tod McBride leaving First Party surviving, Second Party shall transfer, convey and deliver ·to First Party all of the securities and uninvested funds and other assets then in its hands as part of the said Trust; and in either case this agreement and the Trust hereby created, shall thereupon cease and determine."

Early in 1924, Sarah, who was afflicted with an incurable and aggressive disease, went to Cleveland and became a patient in the hospital of the defendant, The Cleveland Foundation, which was managed by George W. Crile, one of the trustees of the McBride trust, and a son-in-law of J. H. McBride. Sarah remained in Cleveland, or its vicinity, until her death, except for a few·brief visits to the plaintiff in New York and occasional trips to other places, and during this time became alienated from the plaintiff. After she left the home of her mother, Sarah demanded that she receive all the income from the two trusts and plaintiff directed the trustee to comply with her demand, which was done from July, 1925, until her death October 4, 1932. There was paid into the Ethel Tod McBride Trust prior to July, 1925, $265,317.10, all of which was received from the J. H. McBride trust.

For the calendar year 1916, plaintiff included in her personal income tax return all the taxable income paid to the Bank as agent. Acting on the advice of the Bank for the taxable years 1917 to and including a part of 1920, she included the taxable income in her fiduciary returns for her two daughters, and' after Elizabeth's death in 1920 and for each succeeding year until 1925, acting on advice of the Bank, the plaintiff included the income arising from the trust in her fiduciary return for Sarah, both to the Federal Government and the State of New York.

In 1929 Sarah Tod McBride made a will naming the Bank executor and The Cleveland Clinic Foundation her residuary legatee with some specific bequests to others, her mother not being mentioned.

After her death, the plaintiff demanded of ₀the Bank that it deliver to her the entire trust fund, which it declined to do on the ground The Cleveland Clinic Foundation was claiming it under the will of Sarah Tod McBride.

Thereupon plaintiff instituted this action asserting in her petition that she had the absolute title and ownership to such portion of the net annual income accruing under item 3 of the J. ·H. McBride will as she desired, conditioned that she educate and maintain her daughters, Sarah and Elizabeth, and alleged she had· complied with this condition. The Bank as trustee filed an answer and cross bill, disclosing therein the property in its hands and the conflicting claims of the Clinic Foundation and the plaintiff, and the court entered an order requiring the claimants to interplead.

The defendants, The Cleveland Clinic and the Bank as executor in their answers and cross bills asserted that the J. H. McBride trust was for the sole benefit of his granddaughters and the plaintiff had no beneficial interest therein, that the trust was to be held by the trustees until the granddaughters respectively arrived at the age of twenty-five years with cross remainders to the survivor should either die prior to attaining that age without issue, with the residuary interest to the testator's four surviving children should both granddaughters die before reaching the age of twenty-five years.

They further alleged the accumulations on said trust were to be added annually to the principal and become a part thereof, less any sum the plaintiff or, in case of her death, the trustees, might withdraw and expend solely for maintenance and education of the granddaughters.

They also alleged the plaintiff had no personal interest in the trust fund and could not divert any part of it to her own use or substitute any method of accumulation contrary to the provisions of the McBride will.

The plaintiff filed separate answers to the cross bills of the defendants and claimed recoupment if the Court concluded she was not a devisee under the will. She alleged she had expended out of her personal estate for the education and maintenance of her two daughters during their minority a sum in excess of the entire Ethel Tod McBride trust and was entitled to reimbursement out of it. The defendants in their replies, while admitting the plaintiff had maintained her daughters luxuriously out of her estate, denied she had done so with expectation of reimbursement and that in any event she was under moral and legal obligation to do so without compensation from the McBride trust. They also relied on the defenses of limitation and laches.

Reference was had to a Master and on exceptions by each of the parties to his report the Court adjudged:

1. The claim of plaintiff that she was entitled to the entire Ethel Tod McBride trust was denied.

2. The equitable recoupment asserted in her amended answer was allowed to the extent that when she expended her money for the benefit of either of her children, an equal amount of the trust fund, together with its net gains, became in equity her property.

This resulted in an allowance to the plaintiff in excess of the value of the securities and cash in the hands of the trustee and she was awarded all of it.

Defendants insist plaintiff is barred from asking this Court to construe the J. H. McBride will in the absence of a cross appeal. This position is unsound.

An appellee without a cross appeal may not attack a decree with a view to either enlarging his own rights thereunder or of lessening those of appellant. United States v. American Railway Express Company, 265 U.S. 425, 438, 44 S. Ct. 560, 564, 68 L.Ed. 1087. He may, however, without taking a cross appeal, urge in support of the affirmance of a decree any matter appearing in the record, even though it be an attack upon the reasoning of the lower court. So long as the judgment of the lower court is not re-

versed, the appellee without a cross appeal may rely on any record ground to support it. Compare Morley Company v. Maryland Casualty Company, 300 U.S. 185, 193, 57 S.Ct. 325, 328, 81 L.Ed. 593; Stelos Company v. Hosiery Motor-Mend Corporation, 295 U.S. 237, 239, 55 S.Ct. 746, 79 L.Ed. 1414; Langnes v. Green, 282 U. S. 531, 535, 51 S.Ct. 243, 244, 75 L.Ed. 520; Helvering v. Gowran, 302 U.S. 238, 247, 58 S.Ct. 154, 82 L.Ed. ——; Helvering v. Pfeiffer, 302 U.S. 247, 253, 58 S.Ct. 159, 82 L.Ed. ——; Anderson v. Atherton, 302 U.S. 643, 58 S.Ct. 53, 82 L.Ed. ——.

If the judgment of the lower court is sustainable by holding that plaintiff was entitled to the entire income of the McBride trust without accountability, it is unnecessary to consider any other question. This brings us to an interpretation of the will.

If the intention of a testator is apparent from the language of a will, the court need only follow it. Cases are of little assistance because the language of one will is seldom that of another. The law must be respected, but the golden rule of interpretation is the intent of the testator which should be made to conform to rules of law which it is presumed the testator knew and considered when drafting his will. The Court should put itself in the position of the testator at the time he made his will and consider all material facts and circumstances known to him with reference to which he used the words in the will and declared his intention. All facts and circumstances respecting persons or property to which a will relates are legitimate and often necessary evidence to enable the meaning and application of the testator's words to be understood.

When the language of Item 3 of the will is correlated, it appears the testator intended that his grandchildren have an equal share with his children in his estate, the enjoyment of which was postponed until they reached the age of twenty-five. In the meantime the income was to be expended for their maintenance and education and if their mother desired she could expend it for either in such ways and for such things as she deemed proper. No inference can be drawn from the language of the will or from contemporaneous facts that he intended to make her a gift of any part of it. The language "to be held for the equal benefit of my said grand-

daughters * * * with all accumulations thereon" is the antithesis of a devise to the mother. The language "such portion or all of the net annual income derived from said trust estate as their mother, Ethel Tod McBride, desires 'shall be paid to her to be expended by her according to her own judgment" means that she could expend it for her children for any purpose she wished, even though the expenditure might be beyond the pale of maintenance and education as that term is ordinarily understood.

■ The plaintiff relies on a principle of law that where the income of a child's legacy is given to a parent to be applied for or toward its maintenance and education, in the absence of a provision indicating a contrary intention, the parent shall not be held to account for the surplus. The rule applies when the testator makes a gift and states his motive to be the support of someone through the donee. Paisley's Appeal, 70 Pa. 153, 158. It cannot override the intention of the testator expressly or impliedly stated in the will. The following cases state the application of the rule: Macknet v. Macknet, 27 N. J.Eq. 594; Hara v. Hara (Eng.), 33 Bear 88, 55 Reprint 300; Leach v. Leach, 13 Simons 304, 36 Eng.Ch. 304, 60 Reprint 118; Hadow v. Hadow, 9 Simons 438, 16 Eng.Ch. 438, 59 Reprint 426; Johnson v. Johnson, 215 Mass. 276, 102 N.E. 465.

The following cases state the converse: Speckart v. Schmidt, 9 Cir., 190 F. 499; Cole v. Littlefield, 35 Me. 439; Loring v. Loring, 100 Mass. 340; Chase v. Chase, 2 Allen, Mass., 101; Re Jennings Guardianship, 91 N.J.Eq. 488, 110 A. 563; Johnson v. Johnson, 51 Ohio St. 446, 38 N.E. 61.

■ When effect is given to all parts of the will and vitality imparted to each sentence the conclusion is inescapable that no accounting is required as to the income received or disbursements made by plaintiff, in fulfillment of the purposes declared by the testator, but if she retained the income for her own use and wholly failed to apply it for the benefit of the cestuis, an accounting is required. Boden v. Johnson, 226 Mo.App. 787, 47 S.W.2d 155.

■ The plaintiff acquired no title to the corpus of the trust under her agreement of June 30, 1920, with the Bank.

■ It is an elementary principle of law that in the execution of a trust the trustee is bound to comply strictly with the directions contained in the instrument defining the extent and limits of his authority and the nature of his powers and duties. He is prohibited from using the advantage of his position to gain any benefit for himself at the expense of the cestuis que trustent; or from placing himself in any position where his self-interest will or may conflict with his duties as trustee. Any agreement, contract, or dealing with the trust fund, which would result in a benefit to the trustee is invalid. Compare Magruder v. Drury, 235 U.S. 106, 35 S. Ct. 77, 59 L.Ed. 151; In re Clift's Estate, 135 Misc. 4, 237 N.Y.S. 635, 636. It does not follow because the plaintiff is prohibited from taking under the trust instrument that she is without relief.

The doctrine of "equitable lien" is akin to that of subrogation. Both are expressed in "equality is equity" and apply in cases where the law denies relief and where to follow it would work injustice. The remedy has its limits and is not alone controlled by the conscience of the judge.

■ In the absence of an express contract, a lien based upon the fundamental maxims of equity may be implied and declared by a court of equity out of general considerations of right and justice as applied to the relationship of the parties and the circumstances of their dealing. One may by manifest intent and agreement create a security for the discharge of his obligation and another discharging such an obligation, if not a volunteer, has the right to look to the fund for repayment.

If plaintiff, not a volunteer, by caring for and maintaining her children, discharged an obligation of the McBride trust, she is entitled to recoupment. Compare Perez v. Gil's Estate, 29 N.M. 313, 222 P. 907, 35 A.L.R. 43; Re Donnelly's Estate, 246 Pa. 308, 92 A. 306; Jones v. Carpenter, 90 Fla. 407, 106 So. 127, 43 A.L.R. 1409.

The defendants attack the plaintiff's claim on the following grounds:

1. That the law imposed on her a legal and moral obligation to support her children out of her ample means.

2. That her expenditures on their behalf were made without expectation of reimbursement.

3. That her claim is barred by the Statute of Limitations and laches.

Section 7997 of the Ohio General Code provides that a husband, if able, must sup-

port his wife and minor children and if unable, the wife must assist to the best of her ability. The same rule prevails under the laws of New York, Furman v. Van Sise, 56 N.Y. 435, 15 Am.Rep. 441; Zounek's Estate, 143 Misc. 827, 258 N.Y.S. 665; In re Lapides, 144 Misc. 19, 258 N.Y.S. 799. It is also the law of wills that a testator may relieve the parent of this obligation and impose it on his own estate. The responsibility resting on the plaintiff may have been transferred from her to the trust if justified by the language of the will and the circumstances under which it was made.

▆ The testator knew the financial condition and legal obligation of plaintiff at the time he made his will and in the light of this knowledge said "until my said granddaughters shall so arrive at the age of twenty-five years, such portion or all of the net annual income derived from said trust estate as their mother, Ethel Tod McBride, desires shall be paid to her to be expended by her according to her own judgment." It could not be inferred that testator intended the trust income to be withheld from the plaintiff until she had discharged her legal responsibility or that payment to her was to be measured by the amount of her income or the extent of her estate. As an abstract proposition "desire" means to wish for more or less earnestly, but according to context or circumstances the word may import a request or even a demand, and "judgment" means the formation of an opinion or notion concerning some thing by exercising the mind upon it.

▆ When courts find it necessary to consider wills or contracts, it is usual to assume that the party promulgating the instrument acted upon rational considerations and to reasonable effects and ends. It will not be assumed that unreasonableness or irrationality was the intent. The language of the will directed the trustees to pay over to the plaintiff such part of the income as she requested as in her judgment was necessary for the care, maintenance and education of her children.

▆ The plaintiff must have shown by some clear, unmistakeable or affirmative act, a purpose to abandon her claim against the McBride trust in order to constitute a waiver and to show that expenditures out of her estate for her children were voluntarily made. She released her claim

against the McBride trust in consideration of the establishment of her trust, and as it is invalid, equity requires a return to the status quo.

▆ The statements made by plaintiff and her fiduciary income tax returns showing the income of the trust belonged to the children, must be weighed in their relationship to her agency and trust agreements with the Bank and when this is done, there is no evidence of substance showing that plaintiff's expenditures for her children were made without expectation of reimbursement.

Plaintiff made no expenditures out of her estate for her daughter, Elizabeth, after 1920, nor for Sarah after 1925. She created the trust on June 30, 1920, and its terms and those of the agency agreement were known to the trustees of the McBride trust from the date of execution. No demand was made on her by any of the parties for any part of the trust income before the institution of this action. Notwithstanding these facts, defendants insist plaintiff's equitable claim is barred by the Statute of Limitation of the State of Ohio and by equitable laches.

Section 11222 of the General Code of Ohio provides that an action on a contract not in writing, express or implied, must be brought within six years after the cause accrued.

▆ The purpose of plaintiff's answer was to present an equitable defense. It was not, as counsel seems to contend, a set-off or counterclaim, nor on an account or contract. Her defense was an equitable reason for reducing the amount defendants sought to recover below that which appeared to be due when it was shown that all the funds in her trust were illegally obtained. Her answer set up a plea of recoupment which denied the validity of defendants' claim for the full amount. It was not an independent cross claim, but was confined to matters arising out of or connected with the transaction, which formed the basis of defendants' cross bill. It goes only in reduction of the defendants' claim and can be used as a cross action only to the extent of their demand. Judgment cannot be obtained by the plaintiff for any balance in her favor against the defendants. The Statute of Limitations has no application. Bull v. United States, 295 U.S. 247, 263, 55 S.Ct. 695, 701, 79 L.Ed. 1421.

858

The doctrine of laches does not apply in this case. Lapse of time does not bar the right to property if it be in the possession or under the control of the claimant. Plaintiff acted on the assumption, and not without some justification, that all the income arising from the trust was for her use and at her disposal. In 1916 the trustees directed the Bank in writing to turn over to her all the income of the trust and she put it in the agency account and subsequently in the trust account with their full knowledge. Sarah Tod McBride at no time made demand on plaintiff for the corpus of the trust though at the time she died she was twenty-eight years old. She requested the income from it in 1925 which was paid to her from that date until her death. Defendants claim through Sarah Tod McBride and can have no greater rights than she had and on the question of laches they are bound by her delay.

The relief sought by the plaintiff is defensive, not offensive, and is asserted against a claim made for the first time in this action. The doctrine of laches turns on the particular facts in each case and cannot be used as an instrument of oppression. Compare O'Brien v. Wheelock, 184 U.S. 450, 496, 22 S.Ct. 354, 46 L.Ed. 636; Brun v. Mann, 8 Cir., 151 F. 145, 12 L.R.A.,N.S., 154; Williams v. Neely, 8 Cir., 134 F. 1, 69 L.R.A. 232; Pond Creek Coal Company v. Hatfield, 6 Cir., 239 F. 622.

The lower court in determining the allowable sum to the plaintiff gave no consideration to the necessities of her expenditures for her children and did not charge any part of them to her. Defendants insist the court should determine from the facts, first, the necessity of the expenditures and second, allocate a portion of them to plaintiff. During the period of the trust plaintiff enjoyed an income of $1,129,916.04 which varied somewhat, but the annual average of $113,000 is fair. During this same period the trust earned $265,307.10 and the annual average of $27,685.26 is fair. The combined average income is $140,676.86 and in determining the proper sum to be expended for the maintenance, education and care of the children, this is the one to be considered.

The testator executed his will in 1910; his son had been dead three years and his grandchildren were six and four and continued to live near him until his death in 1913. Throughout history, the family has afforded protection to its members and its head traditionally guards them from bodily harm from enemies and against economic insecurity in infancy and endeavors by education and moral training to prepare the infant for the station he is to assume in life. The testator desired to insure to his fatherless grandchildren, security in youth and maturity and to compensate them for the loss of their father's care and guidance. He seems to have had implicit confidence in his daughter-in-law and to have trusted her discretion unreservedly. He placed the entire income from the trust in her hands "if she desired" to be expended by her according to "her own judgment."

The discretionary power vested in a trustee will not be disturbed by the Court in the absence of bad faith or fraud. Colton v. Colton, 127 U.S. 300, 322, 8 S.Ct. 1164, 32 L.Ed. 138.

Under the terms of this will, we think whoever invokes the aid of the Court to regulate and control the broad discretion with which the mother was clothed, must cite facts and circumstances which will impel the Court to do so. There is no charge she acted in bad faith as to any of the matters confided to her discretion or that she abused the confidence imposed in her by the testator. There can be no doubt she was clothed with discretionary power by the will in the expenditure of the income.

Where a testator devises property or its income for the express purpose of the maintenance and education of infants, the application of the property or income for that purpose must be made without regard to the ability of parents to support them.

The apparent conflict of authority on this subject disappears when the criterion for decision is the language of the will. If it be absolute in terms, showing no qualification, condition or limitation, the cestui que is entitled to the whole estate to the extent of the devise and whoever discharges the obligation imposed on the trust estate, if not a volunteer, is entitled to recoupment, whether it be a parent or another standing in loco parentis, and without regard to his estate or independent means. Compare Kendall v. Kendall, 60 N.H. 527; Matter of Friedlander, 189 App.Div. 90, 178 N.Y.S. 50; Freeman v. Coit, 27 Hun, N.Y. 447; Hill v. Clark, 74 Pa.Super. 181; Crocker v. Crocker, 11 Pick. 252, 28 Mass. 252; Wilson v. Wilson, 145 Mass. 490, 14

N.E. 521, 1 Am.St.Rep. 477; Holden v. Strong, 116 N.Y. 471, 22 N.E. 960; McKenzie v. Ashley, 145 Mass. 577, 15 N.E. 88; Re Bremer's Estate, 156 Misc. 160, 281 N.Y.S. 264; Taylor v. Elder, 39 Ohio St. 535.

Section 11493 of the General Code of Ohio makes all persons competent witnesses except those of unsound mind and children under ten years of age who appear incapable of receiving just impressions of the facts and transactions about which they are called to testify. Section 11495 provides a further exception by prohibiting a party from testifying when the adverse party is an executor or administrator or claims or defends as heir, grantee, assignee, devisee or legatee of a deceased person. This section also has its exceptions which permit a party to testify if the action involves the validity of a deed, will or codicil or, if a party offers evidence of conversations or admissions of the opposite party, the latter may testify concerning them.

Plaintiff established the sum she had expended for the support and maintenance of her children largely by her own testimony. She claims this action involves the validity of a deed and, if not, the defendants waived her incompetency by calling on her to testify through interrogatories and by cross-examination. This action does not involve the validity of a deed. Paddock v. Adams, 56 Ohio St. 242, 46 N.E. 1068; Rieger v. Hotel Rieger Company, 124 Ohio St. 152, 177 N.E. 211.

The interrogatories propounded to plaintiff asked whether she had in her possession, and would produce, letters between her and her daughters, Sarah and Elizabeth, or either of them, in respect to the J. H. McBride trust, her agency and trust agreements with the Bank and what expenditures she had made out of her individual estate for the support of her daughters or either of them, and charged to their accounts or either of them.

After plaintiff had testified in chief concerning her own expenditures for her daughters, the following questions were asked on cross-examination which were beyond the scope of the direct:

"Q. Mrs. Humphrys, you were administrator of the estate of your daughter, Elizabeth, were you not? A. Yes.

"Q. And received her entire estate? A. Yes.

"Q. Were any claims ever filed with you as administrator of Elizabeth's estate? A. What do you mean by that?

"Q. Did anybody ever claim that Elizabeth owed them any money? A. No.

"Q. You never made any claim against yourself as administrator? A. Against myself as administrator? What do you mean?

"Q. For any money that Elizabeth owed you? A. She didn't owe me any money."

It is well settled that statutes disqualifying an interested witness are waived by the adverse party if he calls the witness and interrogates him concerning transactions, communications or other matters with the decedent as to which he is incompetent to testify in his own behalf. The same effect is precipitated by a cross-examination beyond the scope of the direct. Compare Philadelphia & Trenton Railroad Co. v. Stimpson, 14 Pet. 448, 459, 10 L.Ed. 535; Wills v. Russell, 100 U.S. 621, 629, 25 L.Ed. 607; O'Neil v. Stratton, 8 Cir., 64 F.2d 911; American Issue Pub. Co. v. Sloan, 6 Cir., 248 F. 251; Miller v. Consolidated Royalty Oil Company, 8 Cir., 23 F.2d 317; Stream v. Barnard, 120 Ohio St. 206, 165 N.E. 727, 64 A.L.R. 1144; Woodyard v. Sayre, 90 W.Va. 547, 111 S.E. 313; Nolty's Adm'r v. Fultz, 261 Ky. 516, 88 S.W.2d 35; Prince v. Abersold, 123 Ohio St. 464, 175 N.E. 862; Grissom v. Sternberger, 4 Cir., 10 F.2d 764.

The defendants waived the disqualification of the plaintiff.

Affirmed.

SIMONS, Circuit Judge, concurs in the result.