*By order of the Bankruptcy Appellate Panel, the precedential effect of this decision is limited to the case and parties pursuant to 6th Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

**File Name: 07b0012n.06**

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re: STEVEN M. OELRICH, | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| JAMES R. WARREN, TRUSTEE, | ) | |
| Appellant, | ) | No. 07-8002 |
| v. | ) | |
| SECURITY NATIONAL BANK, | ) | |
| Appellee. | ) | |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio, Western Division, at Dayton.
No. 06-31614.

Submitted: August 1, 2007

Decided and Filed: September 11, 2007

Before: GREGG, LATTA, and WHIPPLE, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ON BRIEF:** James R. Warren, Springfield, Ohio, for Appellant. Brandin Marlow, W.D. Shane Latham, GORMAN, VESKAUF, HENSON & WINEBERG, Springfield, Ohio, for Appellee.

---

## OPINION

---

MARY ANN WHIPPLE, Bankruptcy Appellate Panel Judge.  Appellant James R. Warren ("Warren"), the Chapter 7 Trustee, appeals the bankruptcy court's order denying his objection to the secured claim asserted by Appellee Security National Bank and Trust Company ("the Bank"). Warren challenges the validity of a security interest claimed by the Bank in Debtor Steven Oelrich's interest in cash distributions under his father's testamentary trust ("the Trust").[1]  For the reasons that follow, the bankruptcy court's order is AFFIRMED.

## I.   ISSUE ON APPEAL

The issue presented in this appeal is whether the bankruptcy court erred in denying Warren's objection to the Bank's secured claim and concluding that the Bank holds a valid security interest in Debtor's interest in distributions under the Trust.

## II.   JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel ("BAP") of the Sixth Circuit has jurisdiction to hear this appeal.  The United States District Court for the Southern District of Ohio has authorized appeals to the BAP,  and neither party has timely elected to have this appeal heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1).   A "final order" of a bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1).  For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v.*

---

[1]  This dispute originally arose in the context of a motion for relief from stay filed by the Bank.  Although the validity of a lien is normally determined in the context of an adversary proceeding, *see* Fed. R. Bankr. P. 7001(2), at the hearing on the motion for relief from stay the parties agreed that no further discovery was necessary and that all relevant facts were before the court. The bankruptcy court, therefore, granted the parties' request to treat the issue regarding the validity of the Bank's lien as if on a motion for summary judgment filed by Warren and set a further briefing schedule.  In the meantime, the automatic stay terminated upon Debtor's discharge thereby rendering the motion for relief from stay moot.  The bankruptcy court's order, therefore, addresses only the validity of the Bank's security interest.

*United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). The bankruptcy court's order denying Warren's objection to the Bank's secured claim and determining the validity of the Bank's lien is a final order. *Morton v. Morton (In re Morton)*, 298 B.R. 301, 303 (B.A.P. 6th Cir. 2003); *Rabin v. Shanker (In re Shanker)*, 347 B.R. 115 (Table), 2006 WL 1520082, at *1 (B.A.P. 6th Cir. June 5, 2006).

The facts are not in dispute. The Panel reviews a bankruptcy court's conclusions of law *de novo*. *Adell v. John Richards Homes Bldg. Co. (In re John Richards Homes Bldg. Co.)*, 439 F.3d 248, 254 (6th Cir. 2006). Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination. *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001).

## III.   FACTS

The following facts are not in dispute. Melvin C. Oelrich executed his last will and testament on February 12, 1991. His will established a testamentary trust for the benefit of his two children, one of whom is Debtor Steven Oelrich ("Debtor"), and a church as contingent beneficiary in the event of the death of both his children before termination of the Trust. After Melvin Oelrich's death in 1997, the Trust was established, with the Bank serving as trustee since that time. Under the terms of the Trust, the Bank is required to make nondiscretionary distributions to Debtor and his sister, or to the survivor of them, in a predetermined amount to be paid monthly over a period of twenty years, after which all trust funds will have been distributed and the trust will terminate. Except for payment to the contingent beneficiary in the event of the death of both Debtor and his sister before the termination of the Trust, the Trust provides for no other distributions. The Trust contains no specific anti-alienation language or spendthrift provision. The Trust granted the Bank broad powers, including the power to "rent, exchange, sell, convey, and transfer at public or private sale . . . all or any part of the real or personal property comprising the trust estate" and "deal with the property comprising the trust estate as fully and freely as if it were the absolute owner of the same." (J.A. at 41.)

In 2001, Debtor executed a Variable Rate Consumer Note, Disclosure and Security Agreement in favor of the Bank, financing approximately $44,000. As part of this loan transaction, Debtor granted the Bank a security interest in his future distributions under the Trust. On October

6, 2005, Debtor refinanced the earlier loan by executing a promissory note in favor of the Bank in the principal amount of $47,989.40 and again granted the Bank a security interest in distributions to which he was entitled under the Trust. As of March 31, 2006, the Trust had a value of $151,081. Debtor filed his Chapter 7 bankruptcy petition on June 22, 2006.

Warren did not dispute the validity of the Bank's loan documentation or the perfection of its security interest. Rather, he argued that the security interest is invalid because the Trust does not authorize a beneficiary to grant, or the trustee to accept, such an interest. Warren also argues that the security interest is invalid because the Bank violated its fiduciary duty as trustee in that it benefitted from the secured loan transaction. The bankruptcy court rejected Warren's argument that the Trust does not authorize the security interest because the Trust contains no spendthrift provision or anti-alienation language and confers extremely broad powers on the Bank, as trustee. The bankruptcy court also rejected Warren's breach of fiduciary duty argument, finding that the secured loan transaction "was with the beneficiary, not with the Trust, and it had no impact whatsoever on the Trust corpus." (J.A. at 63.) The court further found that "[a]t most, the transaction represented a conflict of interest for the Bank in that the Bank was a trustee with a fiduciary duty to the Trust and its beneficiaries while it was at the same time a lender to one of the beneficiaries who pledged his future distributions from the Trust as collateral for the loan." (J.A. at 64.) Relying on *Saba v. Fifth Third Bank*, Case No. L-01-1284, 2002 WL 31002781 (Ohio App. Sept. 6, 2002) and *McDaniel v. Hughes*, 111 A.2d 204 (Md. 1955), the court concluded that because there were no allegations that the Bank acted in bad faith or that the beneficiary was in any way misinformed or prejudiced by the transaction with the Bank, a potential conflict of interest does not invalidate the security interest.

## IV.    DISCUSSION

In arguing that the Bank's security interest is invalid, Warren advances several arguments. In his first two arguments, Warren relies on the provisions of the Trust itself. He first argues that the loan transaction with Debtor was a breach of the Bank's duty to the Trust in that it upset the intent of the testator to have trust funds paid out to his children over a period of twenty years. Next, he argues that the Trust does not give power to the Debtor to borrow against his interest in the trust or to give a security interest with respect to future distributions, nor does the Trust confer power on the Bank to accept a security interest in Debtor's right to future distributions.

A basic tenet of Ohio law in the construction of a will or trust is to ascertain the intent of the testator or settlor. *Domo v. McCarthy*, 66 Ohio St. 3d 312, 314 (1993). When the language of a testamentary trust is not ambiguous, intent must be ascertained from the words contained in the instrument. *Id.; Nat'l City Bank, N.E. v. Beyer*, 89 Ohio St. 3d 152, 156 (2000). In determining whether a trust imposes a restraint on the voluntary or involuntary transfer of a beneficiary's interest in the trust property, "no particular form of language is necessary . . . but the settlor must manifest [his] intention in language which is clear and unequivocal." *Scott v. Bank One Trust Co. (In re Baldwin)*, 142 B.R. 210, 213 (Bankr. S.D. Ohio 1992); *see Scott v. Bank One Trust Co.*, 62 Ohio St. 39, 44 (1991) (finding that the settlor intended to create a spendthrift trust where the trust included language that the trustee shall distribute the trust property unless, among other things, the beneficiary "would not personally enjoy the property" since such language, while not expressly restraining alienability, has the same effect).

The language of the Trust in this case is not ambiguous. It requires the Bank to pay monthly distributions to Debtor and his sister, the amounts of which are determined by a specific formula, for a period of twenty years, after which all trust funds will have been disbursed and the Trust will terminate. The only contingency to receiving the distributions is that Debtor remains alive. In the event of the death of either Debtor or his sister, the monthly distributions will be paid in their entirety to the survivor of them. There is no express language in the Trust prohibiting Debtor's alienation of his interest in the Trust and no other language that would accomplish the same goal as a spendthrift trust.

Warren contends that the Bank upset the intent of the testator since its loan transaction with Debtor, upon Debtor's default, results in future distributions under the Trust to be paid to the Bank rather than Debtor as required by the Trust. The terms of the Trust, however, granted Debtor an alienable right to distributions over a period of twenty years. Nothing about the Bank's secured loan transaction with Debtor upsets this intent. Although a trustee has a duty to carry out a trust in accordance with its terms, the fact that the Bank permitted Debtor to exercise his right to transfer his interest in the Trust to the Bank rather than to a third-party creditor does not breach that duty. As the bankruptcy court observed:

> The secured transaction objected to did not even effect the Trust corpus, but
> merely attached to monthly distributions from the Trust. Those distributions were

not accelerated but were disbursed and will continue to be disbursed in the exact amounts and on the exact dates prescribed by the Trust instrument. It is true that the beneficiary obtained the benefit of those funds in advance by using the future stream of payments as collateral for his loan, but he might have achieved the same result by using different collateral or obtaining an unsecured loan.

(J.A. at 63.)

Warren's argument that the Bank's security interest is invalid because the Trust does not confer power on either the Debtor or the Trustee to grant or accept a security interest in future distributions under the Trust is contrary to Ohio law. Under Ohio law, a Trust need not expressly grant a beneficiary the power to transfer his interest in trust property. Rather, as discussed above, a beneficiary has the right to transfer his interest in a trust unless the trust contains clear and unequivocal language imposing a restraint on alienation. The Bank's acceptance of the security interest simply recognizes Debtor's right under the terms of the Trust to transfer such an interest.

In support of his remaining arguments, Warren relies on the following principles set forth in *Cleveland Clinic Foundation v. Humphrys*, 97 F.2d 849 (6th Cir. 1938):

> It is an elementary principle of law that in the execution of a trust the trustee is bound to comply strictly with the directions contained in the instrument defining the extent and limits of his authority and the nature of his powers and duties. He is prohibited from using the advantage of his position to gain any benefit for himself at the expense of the cestuis que trustent; or from placing himself in any position where his self-interest will or may conflict with his duties as trustee. Any agreement, contract, or dealing with the trust fund, which would result in a benefit to the trustee is invalid.

*Id.* at 856.

Warren argues that the Bank's security interest is invalid because it used the advantage of its position to gain a benefit for itself. While it is true, as Warren argues, that the Bank benefitted from its secured loan transaction with Debtor by charging interest on the funds loaned, there is no evidence that the Bank coerced Debtor to borrow money from it instead of another lender or improperly used its position as Trustee in any manner in order to gain such a benefit.

Warren also argues that the Bank placed itself in a position where its self interest will or may conflict with its duties as trustee. He suggests that a conflict could arise in determining what investments included in the Trust's portfolio would make the loan secure and what would be in the

best interests of the beneficiaries. While transactions involving a potential conflict of interest must be carefully scrutinized by the courts, they are not *per se* invalid under Ohio law. *See Squire v. Emsley*, 137 Ohio St. 26, 33-34 (1940) ("Such transactions . . . call for the utmost good faith, and when questioned, the courts will scrutinize them with care. . . ."); *Saba v. Fifth Third Bank*, Case No. L-01-1284, 2002 WL 31002781, at *4 (Ohio App. Sept. 6, 2002).

Warren did not present or even allege any facts impugning the fairness of the secured transaction at issue in this case or of any of the investments in the Trust's portfolio. As the bankruptcy court found, there is no evidence that the Bank acted in bad faith or that Debtor was in any way misinformed or prejudiced by the transaction with the Bank. While "extreme diligence and fair dealing" are required of a trustee where a potential conflict of interest may arise, *Squire*, 137 Ohio St. at 35, the mere possibility of such a conflict does not render the Bank's secured transaction with Debtor invalid.

Finally, in his reply brief, Warren argues that the crux of this case is the principle stated in *Humphrys* that "[a]ny agreement, contract, or dealing with the trust fund, which would result in a benefit to the trustee is invalid." *Humphrys*, 97 F.2d at 856. However, the secured transaction at issue was between the Bank and a beneficiary, not the Bank and the Trust. The security interest received by the Bank was intangible property owned by Debtor, namely, his future interest in trust distributions. The security interest does not encumber the trust funds themselves. Thus, the Bank received no benefit through dealings with the trust fund.

## V. CONCLUSION

For the foregoing reasons, the bankruptcy court's judgment denying Warren's objection to the Bank's secured claim is AFFIRMED.