In the Matter of the Estate of Michael P. Weisskopf, Leslie M. Weisskopf and Richard O. Weisskopf, Minors.

Marcella W. Stillerman, Formerly Known as Marcella Weisskopf, Guardian of the Estate of Michael P. Weisskopf, Leslie M. Weisskopf and Richard O. Weisskopf, Minors, Appellant, v. Ira D. Schultz, Guardian ad litem, Appellee.

Gen. No. 48,724.

First District, Third Division.

February 13, 1963.

Rehearing denied March 27, 1963.

Shaffer, Seelig, Mandel & Shapiro, of Chicago, for appellant.

Ira D. Schultz, of Chicago, guardian ad litem, appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

The three minor children in this case have two guardians: their mother, Marcella Weisskopf Stillerman, who is the guardian of their estates, and Ira D. Schultz, who is their guardian ad litem. Their mother presented her first current account for each of the minor's estates and asked reimbursement for the cost of supporting her children. The expenses charged against their estates included food, clothing, medical care, camp, religious school, the purchase of a piano for her daughter and a proportionate share of the

taxes, maintenance and insurance for the family home. The guardian ad litem objected. He contended that these expenses were the mother's obligation and should be paid from her own funds. The acting judge of the Probate Court agreed and entered an order sustaining the objections. The mother has appealed.

The decision of the Probate Court was based on a stipulation submitted by the parties. It was agreed that the expenses, both as to type and amount, were fair and reasonable and that the home provided by the mother was in keeping with the family's financial condition and station in life. The stipulation stated that the net estate of each child was $42,997.34, represented by notes receivable; that the mother had cash and investments of $83,000, notes receivable of $133,-000, the family home valued at $25,000 and that her income for the preceding calendar year had been approximately $12,000.

The stipulation also set forth the issue to be decided:

". . . whether such items of expenditure, which constitute the cost of support and maintenance of a minor child, should be charged to the minor's estate or should be borne by the mother of the child, where both the assets of the minor's estate and the assets of the mother are sufficient to pay the expenses of supporting and maintaining such minor child."

This issue has been before the courts of Illinois on two occasions. In both cases it was held that if minors have funds for their own support, the mother may be reimbursed from their estates for expenditures made in their behalf even though she is in a financial position to maintain them. In Mowbry v. Mowbry, 64 Ill 383 (1872), a father willed the bulk of his estate to his son. His will stated that it was his expectation that

his wife's dower would be sufficient to support her and two minor daughters, but that, if necessary, expenses for support and education of the daughters should be paid from that part of the estate bequeathed to his son. The mother, the children's guardian, sought reimbursement for supporting the children from the property devised to the son. The County Court allowed her claim and the Supreme Court affirmed, saying:

> "It is first urged that, where the mother has separate property, the law charges her with the support of her minor children having no means of their own for their support, and a court of chancery, if necessary, will make their support a charge on such property. This is, no doubt, true where infant children have no means and are unable to earn a support, and no other provision has been made for their maintenance; but where they have the means for their own support, or provision has been made for that purpose, or her children can maintain themselves, the law does not charge the mother with such support."

In Lagger v. Mutual Union Loan & Bldg. Ass'n, 146 Ill 283, 33 NE 946 (1893), the mother and the minor children had interests in certain real estate left by her husband and their father. The mother collected the rent and used part of the proceeds to support the children. The question was whether the mother had the right to deduct these expenses from the rent. The court said:

> "It would be unjust to compel the mother to restore to the appellants the rents which she thus expended in their behalf. The father is bound to support his minor children, if he be of ability, even though they have property of their own; but this obligation, in such a case, does not extend to the mother . . . ."

In the 70 years since the Lagger opinion the precise issue has not been before an Illinois court of review. However, from opinions in other cases, based on dissimilar facts to be sure but involving a mother's obligation to support her children, it can be surmised that if the same issue had been presented a different conclusion would have been reached. Purity Baking Co. v. Industrial Commission, 334 Ill 586, 166 NE 33 (1929); Hoover v. Hoover, 307 Ill App 590, 30 NE2d 940 (1940); Girls Latin School of Chicago v. Hart, 317 Ill App 382, 46 NE2d 118 (1943). The fullest expression is in Purity Baking Co. A mother of a 15-year-old girl was killed while employed by the baking company. The daughter had been partially supported by the mother and the Industrial Commission awarded her compensation under section 7 of the Workmen's Compensation Act, which fixed the amount to be paid where ". . . the employee leaves any . . . child . . . whom he was under legal obligation to support." The company contended that the mother was under no legal obligation to support her daughter, that this was the responsibility of the child's father. The court held that the child was entitled to support of both parents and said:

> "It is true that at common law the legal status of the mother was such that she was not under legal obligations to support her minor children where the father was alive and able to do so. The common law rule has been modified by a number of statutory provisions. One of these makes it a misdemeanor where either parent refuses 'to provide for the support and maintenance of his or her child.' (Cahill's Stats 1927, c 38, § 2.) This expressly includes both parents. Another makes the 'expenses of the family and of the education of the children . . . chargeable upon property of both husband and wife.' (Cahill's Stats 1927, c 68,

§ 15.) This includes expenses for all necessaries even though used exclusively by individual members of the family. (Hyman v. Harding, 162 Ill 357.) A third requires that poor persons shall be supported by certain relatives, among which the mother is expressly included. (Cahill's Stats 1927, c 107, § 1.) A fourth is: 'The parents of a minor shall have equal powers, rights and duties concerning the minor.' (Cahill's Stats 1927, c 64, § 4.) Furthermore, the principal reason for the common law rule no longer exists. Under the common law all of the earnings and property of the wife belonged to the husband. Therefore it was only natural and proper that he should be the one primarily responsible for the support of the children, which has always been regarded as a natural obligation of both parents. Under such circumstances it would have been idle to place upon the wife obligations that could only be satisfied out of the property of the husband. However, since the wife has become emancipated and now possesses the full enjoyment of her property and earnings there is no longer any reason why she should not be held legally responsible for the support of her minor children equally with her husband. This is true particularly in view of the statutory provisions above mentioned."

At the present time we have statutes which are identical with or similar to those cited in the above opinion. One makes it a misdemeanor where either parent contributes to the dependency of a child. Ill Rev Stats 1961, c 23, § 2361. Another makes the "expenses of the family and of the education of the children . . . chargeable upon the property of both husband and wife . . . ," c 68, § 15. A third, the Public Assistance Code, provides that "The parents are severally liable for the support of any child or children under 18

385

years of age . . . ," c 23, § 112. A fourth, the Support of Dependents Act, provides that "Both husband and wife are severally liable for the support of any child or children under 18 years of age . . . ," c 68, § 52(a). A fifth, section 52(b) of the same act, spells out the obligation in more specific terms: "A mother is liable for the support of her child or children under 18 years of age . . . ," c 68, § 52(b). A sixth states that "The parents have equal powers, rights and duties" concerning their minor children, c 3, § 132. In addition to these, a statute enacted in 1957, although it pertains only to illegitimates, is indicative of the legislative thinking on the general subject of a mother's duty to support her children: "The mother of a child born out of wedlock shall also be liable for its support, maintenance, education and welfare to the same extent as if the child had been born in lawful wedlock," c 106¾, § 52.

Although these statutes have varied purposes such as the prevention of dependency, the protection of creditors or the support of indigents, and are not designed to cover intra-family financial responsibility of the kind with which we are now concerned, they do have a common accord in that they all set forth the equal duty of parents toward their children. These 1961 statutes, and the central legislative intention suggested by them, are as persuasive to us as were the 1929 statutes to the Supreme Court in the Purity Baking case.

Equally persuasive is the financial status of women in our modern society. There is little relationship between their economic condition today and that of 1893. Prepared foods and laborsaving household devices have brought hours of leisure not known in years gone by. This new found time, together with opportunities for employment occasioned by two world wars, a shorter work week, the mechanization of in-

dustry and helpful technological advancements which have lessened their physical handicap, have made married women family breadwinners. In 1960, 12,-253,000 women, who were living with their husbands, had employment outside of their homes. This was 30.5% of all the married women in the United States. Statistical Abstract of the United States (1961). The percentage and the number of women so employed has increased year by year. In 1959 it was 30.2% and 11,826,000 (Ibid. 1960); in 1955, 27% and 10,423,000 (Ibid. 1956); in 1953, 26.3% and 9,763,000 (Ibid. 1956). Any economic disadvantage suffered by women in former years has disappeared. Not only are they money-makers, they are the money keepers. They own 51% of all the stock listed on the New York Stock Exchange. The 17 Million, Census of Share Owners in America, New York Stock Exchange (June 1962). It is estimated that they hold as much as 65% of the Nation's wealth. American Banker (May 21, 1962).

■■■ There is no longer any substantial reason why different standards should obtain for a father and a mother. Both should support their children to the extent of their ability. The duty is primarily the father's. If he is dead, incapacitated or without sufficient income or means, the responsibility devolves upon the mother. If the children have estates of their own, the father is not relieved of his responsibility nor should the mother be. If children have estates of their own and neither parent has adequate resources to maintain them, the rule laid down in Bedford v. Bedford, 32 Ill App 455, affd 136 Ill 354, 26 NE 662 (1891), should apply to the mother as well as to the father:

"At common law the father was bound to support his children, and the strict rule was that he was entitled to no reimbursement for his outlays in providing such support. As a general rule, no

387

allowance will be made him out of the property of his infant children, if his own means are adequate for their maintenance. If he is able to take care of them out of his own estate, he must do so. Where, however, the father is without any means, or is without sufficient means to maintain and educate his children suitably to their condition and prospects, equity will make him an allowance out of their estates for such purpose. In the matter of granting such an allowance courts are more inclined to be liberal than was their practice in the early history of the law. It is not necessary that the father should be actually bankrupt or insolvent in order to justify a charge against the property of his infant children for their support. The welfare and happiness of the children must be considered, and if the means of the father are inadequate to the promotion of their welfare and happiness, their own property may be resorted to for their maintenance either in whole or in part. Each case will depend largely upon its own circumstances. In determining whether the estate of the children shall be drawn upon and to what extent it shall be drawn upon, the amount of their fortune, their condition and expectancies, the means of their father and the just claims of others upon his bounty, will all be taken into consideration."

 We would stress the last two sentences in the above opinion. First there are so many variables in cases of this kind that inflexible rules cannot be formulated. The judge must weigh the facts in each case and evaluate the needs, the revenue and the estates of mother and children. He must have latitude in the exercise of his discretion and should not be reversed unless there has been an abuse of discretion. Secondly, it is not necessary that a mother impoverish

herself if her children are possessed of their own estates; she need not deplete her resources before seeking reimbursement for expenditures made in their behalf or before requesting aid for anticipated expenses. Incomes from children's estates may be used, and under extraordinary circumstances the principal invaded, for unusual expenses or where the size of their estates makes it advisable that they be furnished more than the mother can reasonably afford.

According to the stipulation in the present case the expenses incurred in behalf of the children were not unusual and the mother has ample assets to support and maintain her children. The order of the Probate Court is affirmed.

Affirmed.

SCHWARTZ and McCORMICK, JJ., concur.