IN RE CARLSON TRUST

(152 N.W.2d 434)

(File No. 10397. Opinion filed July 27, 1967)

**Davenport, Evans, Hurwitz & Smith, Robert C. Heege,** Sioux Falls, for appellants.

**Woods, Fuller, Shultz & Smith,** Sioux Falls, for Henry Carlson, Jr., respondent.

**Kirby, McDonnell & Kirby,** Sioux Falls, for trustee.

HOMEYER, Presiding Judge.

This is an appeal taken and prosecuted by Deming Smith as guardian ad litem for Christie Ann Carlson and Linda Lou Carlson, minors.[1] The appeal is from an order which directed the Northwest Security National Bank of Sioux Falls, as trustee, in the matter of the Emma Lou Carlson Trust, to pay to Henry Carlson, Jr., the father and general guardian of said minors, the sum of $225 per month for their care, support and maintenance.

There is no dispute in the facts; however, we believe a recital will place the controversy in better perspective. Henry Carlson, Jr. and Emma Lou Carlson were divorced sometime before June 30, 1956.[2] On that date a trust agreement was entered into between Emma Lou Carlson and the bank in which it acknowledged receipt of the sum of $38,000 to be used for the benefit of Mrs. Carlson and the two daughters. The trust fund represented the proceeds from the sale of the dwelling house of the Carlsons and was established as a part of their separation agreement. The trust agreement contained customary provisions on investment and the trustee was directed to pay to Mrs. Carlson the sum of $275 per month commencing January 31, 1957, and such further sums as in the judgment and discretion of the

---

1. The notice of appeal also lists H. R. Wivell, grandparent of Christie Ann Carlson and Linda Lou Carlson, minor beneficiaries of the trust, as an appellant.
2. The record in the divorce proceeding is not before us.

trustee shall be necessary for the care, support and maintenance of Mrs. Carlson and the two daughters, and the education of the latter. Payment of additional sums was authorized in the event of illness or other misfortune. The specified monthly payment could be increased or decreased in case of monetary inflation or deflation during the life of the trust.

The agreement also contained the following provisions:

(1) In case of Mrs. Carlson's remarriage payments and allowances for her support were to cease, but the trustee shall pay her "in behalf of her said daughters such reasonable sums as shall be needed for their care, support, maintenance and education." (2) If any beneficiary is deceased the trust "shall nevertheless continue for the benefit of the survivors and it shall continue until the fund be exhausted or until the remarriage of First Party or until the younger or the survivor of the minor beneficiaries shall be 21 years old, whichever shall be the later date." (3) If all beneficiaries of the trust are deceased, the residue is to be paid to Henry Carlson Jr. (4) If Mrs. Carlson remarried, the trust is to continue until the youngest child becomes twenty-one when the residue is to be divided equally between the children, or if one is deceased, the whole residue goes to the survivor. (5) No court supervision of the trust was required, "but it may be invoked, terminated, or reinvoked, when and as deemed necessary." (6) The trust agreement was irrevocable.

On March 9, 1961, the trustee petitioned for court supervision of the trust; it appears Mrs. Carlson had remarried; the $275 monthly payment to her had been discontinued; the trustee had been paying her $150 per month for the support of the daughters.[3] On March 28, 1961, upon notice the court entered its order assuming jurisdiction and supervision of the trust. On May 25, 1961, Mrs. Carlson petitioned the court for an increase in support allowance seeking $125 per month for each child.[4] A hearing was held on the petition and the amount sought was

3. The petition recites as the reason for court supervision some disagreement of the amounts to be paid for the maintenance of the daughters.
4. A letter from Mrs. Carlson Wilcox to her attorney dated December 15, 1960, attached to the petition, details her needs. In it she states: "I was awarded the money used to establish Trust Fund #1. I never received any alimony or child support otherwise."

resisted by Henry Carlson, Jr.[5] On September 1, 1961, judgment was entered allowing Emma Lou Carlson Wilcox the sum of $225 per month for the support of the daughters and additionally the trustee was directed to pay all medical, dental and hospital expenses incurred by Mrs. Wilcox for said daughters.

Mrs. Emma Lou Carlson Wilcox died on April 4, 1966. Shortly thereafter the trustee filed an annual accounting which was approved and the order further recited that the trustee "shall hold all payments in trust until such time as a legal guardian is appointed for the minor daughters of Emma Lou and Henry Carlson."

By habeas corpus in the district court of Lincoln County, Nebraska, Henry Carlson, Jr. obtained custody of his two daughters from their maternal grandparents and they now live with him near Brandon, South Dakota.[6] Thereafter, Henry Carlson, Jr., was appointed guardian of the persons and estates of his daughters and petitioned the court for a support allowance from the trust estate which was granted in the amount of $225 per month. The allowance was resisted by the maternal grandparents. The court found:

> "The trust fund involved in the above matter was established with moneys that represented the proceeds of the dwelling house of the petitioner and the said Emma Lou Carlson at the time they were divorced. Said moneys were all provided by the petitioner and the trust fund was established as a part of the separation agreement between the parties and was one of the conditions of the divorce between the petitioner and the said Emma Lou Carlson. The trust fund was established and exists since the death of the said Emma Lou Carlson for the care, support, maintenance and educa-

5. Henry Carlson, Jr. filed an affidavit to which a projection of balance in fund, income, and expenditures is attached. In his affidavit he states: "* * * a projection of the length of time the money would last if taken out at the rate of $250.00 per month and that the fund would be exhausted by the time the girls are about 18 or 19 years old. In other words it would provide nothing for college education; * * *." The oldest daughter will be of college age in 1968; the other daughter is 1½ years younger.

6. The maternal grandparents have appealed the custody award to the Supreme Court of Nebraska. At time of oral argument no decision had been handed down. Supersedeas pending appeal was denied.

tion of the two daughters of the marriage, namely, Christie Ann Carlson and Linda Lou Carlson."

"That Henry Carlson, Jr. is financially capable of supporting these children."

and concluded:

· "The Trust Agreement involved in this matter provides specifically for the care, support, maintenance and education of the minor beneficiaries of the trust. The Trust Fund is set up for this specific purpose. The petitioner's application for an allowance from the Trust Fund is also for this specific purpose."

Appellant contends that neither the trust agreement nor the applicable law authorize payment of the income or the principal of this trust to the father for the care, support and maintenance of his daughters. He relies upon In re Guardianship of Severtson v. Severtson, 70 S.D. 85, 14 N.W.2d 886, to support his position. In that case, this court quoted from 39 C.J.S. Guardian and Ward § 62, p. 101, as follows:

"A father, being under the legal duty to support his children, even though they have independent means, * * * cannot, as their guardian, be allowed anything out of their estate for their support, unless he is financially unable to support them, in which event the allowance should not be of the entire cost of support but only of such amount as was necessary to be used in view of the father's inability * * *."

Also in this state the statute declares it the duty of the father, and if his means and capacity are inadequate, the duty of the mother, to support and educate their children. SDC 14.0310.

■■ We believe it is well settled in this jurisdiction, as well as elsewhere, that a father is bound to support his minor children, if he is able to do so, even though they have property of their own. In re Guardianship of Severtson v. Severtson, supra; see however, SDC 1960 Supp. 35.1812. The exception to this rule occurs when by a trust, will or agreement, a fund has been set

up for the express purpose of support, maintenance and education of the minor children. In such case, the prevailing rule appears to be that the income and property of the minors shall be applied for that purpose without regard to the ability of the parents to support said minors. Cleveland Clinic Foundation v. Humphrys, 6 Cir., 97 F.2d 849, 121 A.L.R. 163; Slaughter v. Slaughter, Mo.App., 313 S.W.2d 193. See also Annot. 121 A.L.R. 176, 198, 200.

The record in this case clearly reveals that the trust fund involved was created from property of the father or parents[7] of Christie Ann Carlson and Linda Lou Carlson for the specific purpose of maintaining and educating them with various contingencies existent. The parties so recognized it and no other claims for support of the children were made against the father. In fact he zealously watched its disbursement subsequent to his ex-wife's remarriage fearful that it might be injudiciously exhausted with duty to support from other sources reverting upon him. This is not a case of minor children having an estate of their own acquired through gift or inheritance being used to discharge a father's duty to support. The fact that the children when the youngest attained her 21st birthday might share in what remained does not change the character of the trust fund. The trust instrument specifically provides "Should any beneficiary of this trust be deceased it shall nevertheless continue for the benefit of the survivors * * *." No one could contend under this language had Emma Lou Carlson died without remarrying that the fund did not exist for the maintenance and education of the children. Equally without foundation is a construction which would bar its use for that purpose when death occurs after remarriage.

To hold that the father cannot resort to the trust fund to support and educate his children would require us to say that he must twice provide for them. This we cannot do.

Affirmed.

---

7. The record does not disclose how title to the dwelling house was held at time of sale. Concededly, it may have been the homestead which both parties voluntarily abandoned upon sale. In any event, the trust fund was set up from the proceeds to discharge the husband and father's obligation to support his wife and children. SDC 14.0726. See note 4.

ROBERTS and RENTTO, JJ., concur.

HANSON, J., concurs in result.

BIEGELMEIER, J., dissents.

BIEGELMEIER, Judge (dissenting).

While, as the opinion indicates, the record shows the trust fund was established from proceeds of the dwelling house of Henry Carlson, Jr. and Emma Lou Carlson, the trust agreement is between Emma Lou Carlson and the Trustee Bank only, and it acknowledges she "transferred and set over" to the Trustee the $38,000 trust fund, and the Trustee acknowledges receipt of it from her alone. The money had to be hers or she could not have legally created the trust. Henry Carlson, Jr. was not a party to the trust agreement and he has only a future interest contingent on the remarriage of Emma Lou or her death and the death of both children before they reach 21 years of age. The agreement could not and did not relieve the father of his obligation to support the minor children and if the trust had been lost or insufficient he could have been required to support them. It is assumed the father's duty to support his minor child and he may not use the minor's estate unless he is unable to do so. This has been extended to a mother. In re Weisskopf's Estate, 39 Ill.App.2d 380, 188 N.E.2d 726.

The construction of the trust is obviously a question of intent. Ingalls v. Ingalls, 1951, 256 Ala. 321, 54 So.2d 296, 307. As the opinion indicates no part of the divorce file is in the record. It is clear the mother was given and had custody of the two daughters. Undoubtedly, the trust was to provide a secure fund for the care, support and maintenance of the mother and her two children in a fixed amount until the remarriage of the mother. Upon her remarriage the mother's interest would cease and payments were to be made to her in behalf of the daughters for a reasonable sum "as shall be needed for their care, support, maintenance and education." The education of the children was stated to include "higher education and special training, if that be reasonably possible."

638

In re Tuthill's Will, 1956, 247 Minn. 122, 76 N.W.2d 499, sheds light and a precedent for our determination. The Minnesota court had before it a will that authorized trustees to use such portion of the income "as is necessary for the reasonable and proper care" of testator's son. Necessary there and need here are synonymous. After stating the basic rule of construction is the intention of the testator of a will (or the parties to a trust), Justice Knutson for the court wrote the intention was "that only so much of the property of the trust * * be used as was necessary to furnish proper care, support, and maintenance for Eugene over and above that which he was able to furnish for himself." The principle laid down was the trust was not the primary fund but the secondary fund for the support; that it was not "necessary" or "needed" if other sources were available which legally could supply the funds for the care and support. Here the funds in the trust are not "needed" until the father is unable to perform his legal duty of support.

The trust was insurance against the hazards of death of Mr. Carlson or his insolvency or inability to make any of the payments. During the time the mother had custody Mr. Carlson would have no control over the expenditures of the fixed amount or reasonable amount paid out for the beneficiaries' support except for the reasonable limitation on the trustee and court approval. It seems that while not provided for specifically, the basis or intent and perhaps the motivating force of the setting up of the trust was, that while the mother or some person other than Mr. Carlson had custody of the two girls, the trust was to be used for their care and support without calling upon him to provide it as required by statute unless the trust became depleted by the payments, illness or other misfortune; then, of course, the duty for care and support of the minor children, always present, would become enforcible. Having ·custody and control of the children by the Nebraska district court order and the general guardianship he now has control over these expenditures as their father and custodian and the benefits of their custody and society. Therefore, he should be held to be subject to the requirement of our statute that he provide for their care and support. This was the construction Carlson, himself, placed

on the trust, its background and creation by his 1961 affidavit hereafter mentioned.

Zealously watching the fund's disbursements by objecting to allowances for musical instruction and dental care on July 6, 1961, Mr. Carlson stated in his filed affidavit under oath he was "willing to take both the girls * * * and bring them up and will not ask anything from the trust fund, but will provide them * * * with everything they need if (his former wife) will give them up." In 1966 when he has their custody he desires payment for their care which will reduce or deplete the trust and may deny them the college education he was solicitous about in 1961.

In my opinion liability of the father for support of minors and the consequent use of assets or property of minors falls into two categories. They are: (1) Where the agreement specifically states it is for the purpose of providing for the care and support of the minor in lieu of the parents' legal duty (so far as it may do so by law or the funds in the trust may cover), the trust is the primary fund to be first resorted to—the trust here does not so provide. Except for an unusual situation of a paltry trust fund and a very wealthy parent his financial condition may be of no concern. (2) Where the minor is owner of the property in his or her own right, the parents' liability is primary and the minor's property is liable only in the event, and to the amount, the parent is unable to provide for the support. The availability of the minor's property is secondary. This court has so held in In re Guardianship of Severtson, 70 S.D. 85, 14 N.W.2d 886.

Where the agreement does not clearly state the fund is for the purpose of providing the care and support of the minor in lieu of the parents' legal duty, it falls into the second category, and the ever present statutory duty of the parent to support remains the primary liability and the fund is secondary and the principles of the Severtson opinion apply. This result conforms to the intention of the trust agreement here that, not having custody of the minors or right to determine the amount to be spent for the support, then the fund provided for it; not having contemplated he would obtain their custody and the right to

determine and control this expense, the trust was silent in this event and the fund became subject to use only if the father showed inability to provide their support. Mr. Carlson recognized this in his petition, where he endeavored to come within the compass of the Severtson opinion, by stating he had "need of the funds provided by said trust fund." Paragraph III, S.R. 18. The trial court found otherwise. I would therefore reverse.