462 P.2d 512

Lou Jean NIELSEN, Plaintiff-Appellant,

v.

Christian E. NIELSEN, Defendant-Respondent.

No. 10379.

Supreme Court of Idaho.

Dec. 11, 1969.

**420**

Sharp, Anderson & Bush, Idaho Falls, for appellant.

Jones & Jones, Boise, for appellee.

SHEPARD, Justice.

The principal question presented for decision is: May payments from a trust established by paternal grandparents for the benefit of minor children excuse the father's nonpayment of child support required of him by the terms of a divorce decree?

The principal facts in the case at bar are not in dispute. The parties hereto were married and there were born of that marriage three children, all of whom are still under the age of majority. The parties were separated for a considerable time prior to the commencement of the divorce action by plaintiff. The defendant did not appear in the divorce action and a default and decree of divorce were entered on November 5, 1956. Therein the plaintiff-wife was awarded the custody of the children and the defendant ordered to pay child support in the amount of $120.00 per month.

Prior to the entry of the divorce decree the parents of the defendant, Evald and Ina Nielsen, on July 18, 1956, established a trust in which they had placed real property and corporate stock certificates. No specific valuation of that property originally placed in the trust is shown in the record. The trust donors provided by their wills that additional personal property should pour over into the trust upon their deaths. Both donors are now deceased, the pour-over provisions of their wills have been effectuated, and it appears that the present total amount of the trust corpus is in excess of $200,000.00.

The purpose of the trust is recited therein as:

"The remainder of the net income—if any—shall be used as the trustee deems prudent for the benefit of Lougean Nielsen (plaintiff-appellant herein) and the children born to her and the donor's son, Chris E. Nielsen, whether such children have now been born or are hereafter born, and in the event such income is not sufficient to provide said Lougean Nielsen and the children with the necessities, of life, or in the event of some emergency which in judgment of the trustee would require additional money for said children, to sell a part of the property herein held by said trustee in the trust fund and to continue to distribute the income until said children reach the age of 25 years respectively. * * *

"Fourth—When the youngest of the said children shall have reached the age of 25 yrs., the trustee shall divide the said trust fund, including any accumulated income thereon, into as many equal parts as there may then be living children and deceased children leaving descendants then surviving of the marriage of said Lougean Nielsen and Chris E. Nielsen, and to pay over and deliver one of such equal shares to each of said living children and to divide among the descendants their divisional shares hereunder per stirpes and not per capita."

The said trust agreement further provides that the:

" * * * said trustee shall at all times be governed by what it believes to be for the *best interests of the said children*, and if the said house is of no further use to the mother and children for their personal dwelling house, then said trustee shall have the right and power to sell the same and retain the funds from said sale in the trust funds *for the use and benefit of the said children* along with the other trust funds." (Emphasis supplied.)

At the show cause hearing in 1968, there was admitted into evidence, over the objection of plaintiff-appellant, a letter dated December 31, 1957, written by Evald Nielsen to the trustee, which stated:

"Idaho First National Bank
Boise, Idaho

Attention: Trust Department
"Gentlemen:

"My attorney, Fred H. Snook of Salmon, Idaho, has recently prepared a will for me in which I have directed that an undivided one-third of my property be added to the trust fund which I have heretofore set up with you in the name of Lujean Nielsen for the use and benefit of the children of my son, Evald Nielsen, Jr., and the said Lujean Nielsen. My son and Lujean are no longer married to each other and I want it definitely understood and the purpose of this letter is to instruct you that in the event of her subsequent marriage, that none of the money set up in said trust account is to be used for the benefit of the new husband or any of the children of the new husband and Lujean Nielsen, but instead is at all times to be used exclusively for the support, maintenance and education of the children of Evald Nielsen, Jr., and Lujean Nielsen.

Very truly yours,
Evald Nielsen"

It is undisputed that the defendant-respondent, father of the children, has never paid any monies for child support pursuant to the divorce decree. It was established that as of June, 1968, the defendant was then employed and earning at least $10,500.00 a year. He is also the beneficiary of a trust fund established by his parents which he will receive in approximately two years. The corpus of that trust is approximately $50,000.00.

On May 24, 1957, plaintiff-appellant initiated a show cause proceeding against the defendant-respondent requiring him to appear and show cause before the district court why he should not be held in contempt for failing and refusing to obey that portion of the divorce decree requiring him to pay child support. At that time the donors of the trust, Evald and Ina Nielsen, were traveling in Europe. At the hearing thereon both parties were represented by counsel and the testimony of the defendant was taken. The record does not, however, reveal the content of that testimony. Following the hearing the district judge entered an order finding that the defendant was not in contempt of court and continuing the case. From that order of the court no appeal was perfected and the attempt of the plaintiff-appellant to collect the child support was evidently abandoned.

The father and mother of the defendant-respondent (Evald and Ina Nielsen) are now deceased, having died on July 9, 1963 and September 20, 1966, respectively. On February 8, 1967, plaintiff-appellant instituted this action for an order to show cause why the defendant should not be held in contempt for failure to pay child support

under the provisions of the divorce decree. Following a hearing thereon, the district court entered its findings of fact, conclusions of law, and supplemental judgment. That court in effect found and concluded that the trust established by the parents of the defendant-respondent deprived the defendant of an anticipated personal inheritance which he otherwise could have expected from the estate of his parents; that the payments to the plaintiff-appellant from the trust fund were in excess of the amount required by the divorce decree to be paid by defendant for child support; and that the defendant was released of the duty to support the children to the extent of the monies received from the trust.

From the findings, conclusions and decision of the district court plaintiff-appellant appeals assigning them as error. Plaintiff-appellant also assigns error in the admission of the letter from Evald Nielsen to the trustee. At the hearing testimony was admitted, over objection, to the effect that the trust was set up by the paternal grandparents for the purpose of discharging the defendant's obligation for child support as contained in the divorce decree. That testimony took the form of conversations between the witnesses and Evald and Ina Nielsen purporting to show their intent in establishing the trust. Plaintiff-appellant assigns error in the admission of such testimony.

The testimony at the hearing, although not uncontroverted, tends to indicate that the real property held in trust consisted of an apartment complex. Plaintiff-appellant and the children occupy one of the apartments free of any rent or other obligation, except minor maintenance. The plaintiff-appellant managed the apartment complex and received the rental income from the other apartments without the necesssity of paying anything except minor maintenance. The income, taken together with the rent-free occupation of one of the units, and the cash payments made by the trust directly to the plaintiff, exceeded the $120.00 per month child support payments. For the past two years all rentals received from the real property are paid directly to the trustee, who in turn pays $250.00 per month to plaintiff-appellant. There was further testimony, supported by vouchers, that plaintiff-appellant received in excess of $7,000.00 cash, plus at least two automobiles, as gifts from the paternal grandparents of the children between the time of the divorce and the death of the grandparents. Plaintiff-appellant is able to and does work, although the record does not disclose her income therefrom.

We point out at this tme that the question involved in the case at bar is relatively narrow. Although there is a question ancillary to a trust involved in this case, there is, however, no quarrel among any of the parties to the trust; there is no assertion of wrongdoing on the part of the trustee; there is no assertion of nonpayment of money to the beneficiaries; there is no question as to who are the beneficiaries of the trust; there is no dispute between the various beneficiaries of the trust; there is no dispute as to the amount of the corpus nor the amount of the income from the trust nor the payment of income to any of the beneficiaries. In short, the sole question relating to the trust which is presented to us for decision is: What was the intent of the donors when they established the trust and when they added to the corpus of the trust?

We consider first the assignment of error relating to the admission in evidence of the letter written by Evald Nielsen to the trustee purportedly indicating his intent in the initial establishment of the trust and the pour-over provisions established in his will. We are reminded by appellant that parol evidence cannot be used to alter, vary or add to a written instrument. Green v. K. S. Webster & Sons, 77 Idaho 281, 291 P.2d 864, 58 A.L.R.2d 371 (1955).

The trust instrument reveals that the clear intent of the donors was to provide monies for the support and maintenance of the children of the parties hereto and that upon reaching the age of 25, the

corpus of the trust was to be distributed to said children. Rather obviously, the mother of the children was named as·a "beneficiary" only since she had the actual custody of the children. The letter from Evald Nielsen to the trustee was not in any way an attempt to alter, vary or add to the trust instrument then in existence and therefore the admission of such letter was not error.

■ Error is also assigned in the action of the trial court in receiving testimony of various witnesses regarding the intent of the donors in the establishment of the trust. That testimony was to the effect that the trust was established by the donors to discharge the obligation otherwise incumbent upon their son to support his children. We are again reminded by the appellant that parol evidence cannot be used to alter, vary or add to a written instrument. It is not pointed out to us wherein such testimony seeks to in any way modify, alter or add to the written trust instrument. No duty or right of any party to the trust is varied in any way whatsoever by the reception of such testimony. Appellant argues that the evidence should have been rejected as hearsay since it was the recitation of conversations held between the witnesses and the donors of the trust and the donors are now deceased.

■ A clear exception to the evidentiary rule against hearsay testimony is that such evidence will be accepted when such testimony is probative of the true state of mind of the speaker at the time in question. As stated by Wigmore:

"Applied specifically to the present Exception, the judicial doctrine has been that there is a fair necessity, for lack of other better evidence, for resorting to a person's own contemporary statements of his mental or physical condition. It is indeed possible to obtain by circumstantial evidence (chiefly of conduct) some knowledge of a human being's internal state of pain, emotion, motive, design, and the like; but in directness, amount, and value, this source of evidence must usually be decidedly inferior to the person's own contemporary. assertions of those conditions. It might be argued, however, that the person's own statements on the stand would amply satisfy the need for his testimonial evidence. The answer is that statements of this sort on the stand, where there is ample opportunity for deliberate misrepresentation and small means for checking it by other evidence or testing it by cross-examination, are comparatively inferior to statements made at times when circumstances lessened the possible inducement to misrepresentation.

"For the use of such statements, then, made out of court and without any obvious motive to misrepresent, there is a fair necessity, in the sense that there is no other equally satisfactory source of evidence either from the same person or elsewhere." 6 Wigmore on Evidence, § 1714, p. 58.

As also stated:

"The justification for the state of mind exception to the hearsay rule is the reliability of the hearsay statement when made under circumstances which free it of suspicion, and, secondly, there is a special need for this evidence because of the difficulty of proving the state of· a man's mind. The evidence given under the state of mind exception is trustworthy in the absence of an oath and cross-examination since no present narrative of the declarant himself will be more reliable than the declarations made contemporaneously with the mental state described." Bell, Handbook of Evidence, p. 132.

See also Crenshaw v. Crenshaw, 68 Idaho 470, 199 P.2d 264 (1948).

Since the above mentioned evidence was properly admitted, we may conclude that the trust was established by the donors for the maintenance and support of the children of the parties hereto and that the donors intended the payments from the trust to be in lieu of and in discharge of the defendant's obligation for child support.

■■ Appellant lastly contends that regardless of the intent of the donors of the trust, and regardless of the amount of money available therefrom to support, maintain and educate the minor children of the defendant, the well established duty of a parent to support his minor child remains in existence. It is, of course, well settled here, as everywhere, that it is the duty of a parent to support his minor children. In Re Wilson's Guardianship, 68 Idaho 486, 199 P.2d 261 (1948). We reaffirm and reassert most emphatically the above enunciated rule of law and point out that it is only under the most extraordinary circumstances that such rule of law is modified. The case at bar is illustrative of such an extraordinary example. The general rule is modified where it is clear that a trust fund has been established for the support and maintenance of minor children and that the trust fund is in discharge of the parent's otherwise obligation. Cleveland Clinic Foundation v. Humphrys, 97 F.2d 849, 121 A.L.R. 163 (6th Cir. 1938); In Re Carlson, 82 S.D. 631, 152 N.W.2d 434 (1967).

Appellant urges that the case of Huff v. Huff, 68 Wash.2d 501, 413 P.2d 818 (Wash. 1966), and the controlling case cited therein of In Re Guardianship of Ivarsson, 60 Wash.2d 733, 375 P.2d 509 (Wash. 1962), should be considered as highly persuasive. Those cases are distinguishable from the case at bar. In *Huff* the paternal grandfather had established a trust fund for the minor children of the parties to take care of their "future education." The lower court had awarded these funds in trust to the mother to utilize for the care and support of the children. The Washington Court held that such was a perversion of the purpose of the trust and reversed the action.

In *Ivarsson* the court had for consideration the invasion of a trust of approximately two and one-half million dollars which had been established for the benefit of a minor child. Both parents of that minor child were utilizing approximately $1,000.00 per month of the minor child's estate to support the entire family of two

adults and six children. We suggest that neither of the two cited cases provide any assistance in the determination of the case at bar.

Respondent suggests that this case should be decided on the doctrine of laches. He contends that plaintiff-appellant accepted payments from the trust for 12 years with no protest and no demand upon him for child support. He argues that although the doctrine of laches requires the showing of prejudice to the opposite party as a result of the lapse of time, that he indeed has suffered such detriment. He points out that the only attempts made by plaintiff-appellant to collect child support payments under the divorce decree came in 1957 when the donors of the trust were temporarily unavailable as witnesses and in 1968 after both donors were deceased. He argues that the actions of the plaintiff-appellant in so delaying any action has effectively prevented him from securing direct testimony of the donors of their intent in the establishment of the trust. The opinion of the court renders further discussion of this point unnecessary to the decision.

■ The evidence supports the conclusion of the trial court that the trust established by the paternal grandparents deprived the defendant-respondent of an otherwise-to-be expected inheritance from the estate of his parents; that the trust was established to discharge the otherwise existing obligation of the defendant-respondent to support his minor children; and that sufficient monies were received by plaintiff-appellant to discharge the obligation of the defendant-respondent otherwise established by the divorce decree. The trial court correctly concluded that the obligation of the defendant-respondent to support his minor children was discharged by the payments by the trustee to the plaintiff-appellant of the monies totaling more than $120.00 per month. The trial court also correctly concluded that payments from the trust could be used for the support and maintenance of the minor children under the specific provisions of the trust

instrument. The action of the trial court decreeing that the defendant was not in arrears in child support payments and therefore was not in contempt of court was correct, and the judgment of the district court is affirmed. Costs to respondent.

McFADDEN, C. J., McQUADE, J., and HAGAN, D. J., concur.

DONALDSON, Justice (dissenting).

I dissent. It is the law of this state that a parent owes the duty of support to his minor children. In Re Wilson's Guardianship, 68 Idaho 486, 199 P.2d 261 (1948). If some interested person or some relative, of his own will and volition makes a generous gift to the minor child, is this a sound and logical reason for discharging the father from the duty of support owed to his minor children? Is the father to be relieved of his legal obligations by the occurrence of fortuitous and whimsical events? By holding that the father is relieved of the support obligations merely because his child is independently wealthy, a reward is bestowed upon the father for *not complying with a duty imposed on him by law*. Idaho Code §§ 32–1003, 18–401.

In the case at bar, a trust instrument, clear on its face is intended by the grantor to benefit his grandchildren and their mother. These are the sole beneficiaries of the trust. No intention is expressed in the trust instrument to benefit the donor's son (defendant-respondent). However according to the majority opinion, the grantor's son becomes a beneficiary of the trust since his obligation of support is discharged by applying the proceeds of the trust for the support and maintenance of the minor children. Nowhere in the trust instrument is such purpose stated. This was not an object of the trust. If such were the intent of the grantor it should have been stated in the instrument. The instrument is explicit in that it is a gift to his grandchildren and

their mother. Indeed, an express provision of the trust[1] which was created prior to the decree of divorce and the payment provisions incident thereto, specifically precludes the defendant from asserting his present position since the child support provisions provided for in the divorce decree are clearly valid debts of the son; and debts are the very items expressly excluded by the settlor.

I respectfully direct the attention of the majority to their assertion that, no duty or right of any party to the trust is varied in any way by the reception of testimony tending to prove that the settlor intended the trust to discharge his son's support obligation. This is patently error in my opinion since the designated beneficiaries, viz., the grandchildren and their mother are deprived of their rightful and entire share of the proceeds given them under the instrument since a portion of those proceeds, althought used for their support and benefit, *is in reality not a gift to them, but rather a gift to their father* since it is the father who is legally obligated to support the children, and he is relieved of the support obligation by the interpretation given the instrument by the majority.

The admission at trial of the testimony probative of the settlor's intent to benefit his son was clearly erroneous since the admission of such testimony is a violation of the parol evidence rule. The testimony obviously modifies the written words since:

(1) it adds an unintended beneficiary, viz., the settlor's son;

(2) changes the purpose of the trust since the grandchildren and their mother are no longer the exclusive beneficiaries;

(3) the written words specifically evidence the explicit intent of the settlor that neither the property nor the income involved in the trust shall in anywise be liable for any debts owing by the son or for any debts that may be contracted by him.[2]

---

1. "Neither the property involved in this trust nor the income there from shall not in anywise be liable for any debts owing by my said son or for any debts that

may be hereafter contracted by him or by the beneficiaries herein named."

2. See note 1.

· Such substantial and serious modifications of a trust should not be made by this Court or any other court on the basis of parol evidence unless there is an ambiguity in the trust. Cases involving exceptions to the parol evidence rule involve ambiguity. Since the ambiguity requires clarification resort to parol evidence is permissible. This was the case in Crenshaw v. Crenshaw, 68 Idaho 470, 199 P.2d 264 (1948). However as in the case at bar where the instrument is clear on its face it was error to admit parol evidence which not only modified but contradicted the written words.

The Supreme Court of Washington was faced with a similar problem in the case of Huff v. Huff, 68 Wash.2d 501, 413 P.2d 818 (1966) and reasoned that where a child is the beneficiary of a trust, monies received by such child are part of his estate and since it is the obligation of the parents to support their children there should be no 'support money' paid from the child's estate; unless and until it is established the parents are unable adequately to support the child. This is certainly not the case of the respondent in the instant case since he earns more than $10,000.00 per year.